In the Matter of PERCY JOHNSON, Appellant, v DIRECTOR, DOWNSTATE MEDICAL CENTER, STATE UNIVERSITY OF NEW YORK, Respondent.

Second Department, June 1, 1976

*Mailman & Volin, P. C. (William P. Volin* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (David L. Birch* and *Samuel A. Hirshowitz* of counsel), for respondent.

SHAPIRO, J. In a proceeding pursuant to CPLR article 78 to review the termination of petitioner's employment for alleged unauthorized absence, he appeals from a judgment of the Supreme Court, Kings County, entered October 29, 1975, which denied the petition and dismissed it "in all respects". We reverse and order his reinstatement.

## THE ISSUES

Two issues are raised by this appeal. The first, a procedural one, is whether the petition is barred by the applicable Statute of Limitations. The second is whether petitioner was denied his constitutionally protected due process rights when his "resignation" was accepted by his employer on the authority of section 5.3 (d) of the Rules and Regulations of the Department of Civil Service, which reads in part as follows (4 NYCRR 5.3 [d]): "When an employee is absent without leave and without an explanation therefor for a period of 10 work days, such absence shall be deemed to constitute a resignation effective on the date of the commencement of such absence."

## THE FACTS

Petitioner was employed by Downstate Medical Center, State University of New York, in a civil service position as a laboratory animal caretaker, grade 4. He had achieved permanent status in March, 1963. By letter dated December 26, 1974 he was advised that as he had neither reported for work since December 11, 1974, nor offered an explanation for his absence, his "resignation" was accepted effective December 10, 1974. The letter also stated that this action was "in accord with Civil Service Rules and Regulations of 'unauthorized absence'".

The facts with respect to petitioner's absence from his position during the period from December 11 to December 26, 1974 are in serious dispute. Petitioner asserts that he reported for work on Saturday, December 14, 1974, Sunday, December 15 (his normal workdays), Monday, December 16, when he saw one of his supervisors, and Tuesday, December 17 when, due

to illness, he could stay for only half the day. He also states that he reported to work on December 18, when he conferred with Dr. Robert F. Furchgott, professor and chairman of the department of pharmacology, and informed him and his colleague, Julius Belford, and his supervisor, Mr. Maurice Greaves, that due to his illness he would be out for a few days. In a letter dated December 26, 1974, attached as an exhibit to respondent's answer, the Department Chairman, Dr. Furchgott, informed "Personnel" that the petitioner "has not reported for work nor has he called in since December 11, 1974." Another letter attached to respondent's answer as an exhibit, dated December 16, 1974, is also addressed to "Personnel". In it Dr. Furchgott placed on record the petitioner's work history. He stated that petitioner was not at work on December 11, though he "quietly picked up paycheck", and that he was not at work on the 12th through the 16th and had not called in. Dr. Furchgott closed that letter with the statement: "In summary, it is urgent that you contact him [the petitioner] and follow through with whatever measures are necessary to secure his discharge." There is also attached to respondent's answer, as an exhibit, a copy of a memorandum from Dr. Furchgott to Larry Kram, the person in the personnel office who signed the letter dated December 26, 1974 sent to petitioner advising him that his "resignation" had been accepted under the civil service rules and regulations as a result of "unauthorized absence." The memorandum is dated November 14, 1974 and its subject is "Continuing Unsatisfactory Performance of Mr. Percy Johnson, Animal Caretaker". It states the fact that, in an official "Appraisal Form" sent to the personnel office in June, 1974, petitioner was evaluated as "not fully satisfactory because of too many absences". It went on to say that the situation "has now deteriorated to the extent that I feel it urgent that we get rid of Mr. Johnson and replace him with someone else." The balance of the memorandum dealt with petitioner's many absences from October 15 to November 13 and with defects and failures in petitioner's performance when he did come in. The December 16, 1974 letter from Dr. Furchgott also contains a notation that, on December 13, 1974, the petitioner's wife, when telephoned, stated that she did not know where he was and that on December 16, when the petitioner's wife was again called, she said that she still had not seen him.

In his verified petition, petitioner, in addition to alleging that he was at work on several days during the period

following December 11, 1974, also alleges that "any absences prior to said date and thereafter were as a result of physical incapacitation in regard to which respondent was duly notified both prior thereto, during and subsequent to any absences."

On February 20, 1975 petitioner sent a letter to Larry M. Kram in which he demanded reinstatement, declared that he had not resigned his position on December 10, 1974, but that an "illness prevented me from working during that period of time" and asserted that he had been terminated without being served "a notice of discipline" or allowed his right to a hearing. The instant article 78 proceeding was initiated by a notice of petition and verified petition dated May 30, 1975. The petition was supported by four affidavits sworn to variously on June 5, 1975, July 25, 1975 and August 8, 1975. There was also a fifth supplemental affidavit in support of the petition, sworn to on August 22, 1975. The verified answer to the petition was sworn to July 3, 1975. The opinion of Special Term, dated September 29, 1975, states that "the instant proceeding was commenced on June 10, 1975".

### THE OPINION OF SPECIAL TERM

Special Term, citing *Matter of McDermott v Johnson* (2 NY2d 608) and *Matter of Phillips v County of Broome* (44 AD2d 882), first ruled that the proceeding had not been timely commenced since "wrongful removal or dismissal of a public employee does not require a further demand and refusal" and, therefore, that the applicable four-month Statute of Limitations (CPLR 217) began to run from the date his "resignation" was accepted on December 10, 1974. This was true, said Special Term, even if the period of limitation be measured from December 26, 1974, the date that petitioner had notice that an order affecting him had been issued, citing *Matter of Cornwall v Baxter* (46 Misc 2d 769, mod 23 AD2d 815).

Special Term next rejected petitioner's contention that section 5.3 (d) is invalid because it conflicts with section 75 of the Civil Service Law, which provides that before a civil service employee holding a position by permanent appointment may be discharged he must be given a hearing. In doing so it relied upon *Matter of Dunn v Simon* (16 AD2d 719, mot for lv to app den 11 NY2d 646), which held that there is no inconsistency between the rule and the statute since, under the rule, the severance of employment was by self-abdication and that

under the statute the severance is "by compulsion after a hearing upon charges of incompetency or misconduct" (16 AD2d, at p 720). Special Term also said that "in view of the rationale stated in *Matter of Dunn (supra)"*, it perceived "no violation of petitioner's constitutional rights."

## THE STATUTE OF LIMITATIONS

Despite the fact the the principal issue on this appeal is whether the petitioner was denied his due process right to a hearing prior to his being removed from his position, we must first determine whether Special Term was correct in determining that his article 78 proceeding is barred by the applicable Statute of Limitations provision in CPLR 217 which, in relevant part, states: "a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner * * * or after the respondent's refusal, upon the demand of the petitioner * * * to perform its duty".

Here the petitioner was advised by letter dated December 26, 1974 that respondent was accepting his "resignation effective December 10, 1974." The question turns upon whether "the determination to be reviewed" became "final and binding upon the petitioner" on either of those December dates. If so his petition in this proceeding which, Special Term said, was commenced on June 10, 1975, was clearly time-barred under CPLR 217. There is some authority to the effect that in the case of a wrongful removal of a public employee the removal or dismissal is deemed to constitute a demand and refusal and that the Statute of Limitations begins to run at once *(Matter of Phillips v County of Broome*, 44 AD2d 882, *supra; Matter of Fryer v Broome County Bd. of Supervisors*, 37 AD2d 755; *Matter of Williamson v Fermoile*, 31 AD2d 438). But, as was recently noted in *Matter of Sirles v Cordary* (49 AD2d 330, 332): "The weight of authority, however, supports the proposition that an employee, such as petitioner herein, who is discharged from his governmental position *without a hearing* is not required to seek reinstatement within four months from discharge, but may delay until such time as he has demanded reinstatement and has been refused, provided he has not so unduly delayed seeking reinstatement as to be guilty of laches *(Matter of Burke v Village of Johnson City*, 36 AD2d 202, affd 29 NY2d 846; see, also, *Austin v Board of Higher Educ. of City of N.Y.*, 5 NY2d 430)." (Emphasis supplied.) (See, also, to the

same effect, *Flomenbaum v Drug Abuse Control Comm.,* 50 AD2d 20, 22-23.)

Here, *without a hearing,* petitioner, a civil service employee with permanent employment status, was discharged or, at least, there was an acceptance of a "resignation" which he had never offered. Hence petitioner was "not required to seek reinstatement within four months from discharge" but could "delay until such time as he has demanded reinstatement and been refused" (see *Matter of Sirles, supra).* He demanded reinstatement by his letter of February 20, 1975. When he received no reply to that letter he initiated this instant proceeding on June 10, 1975. That was 10 days prior to the expiration of 4 months from the date of his demand for reinstatement. Hence, his proceeding was not time-barred.

Respondent contends, however, that even if the proceeding were found to be timely commenced, the petitioner's delay in demanding reinstatement from December 26, 1974, the date of the letter notifying him of the acceptance of his "resgination", to February 20, 1975, when he demanded reinstatement, constituted laches sufficient to deny him relief, citing *Austin v Board of Higher Educ. of City of N.Y.* (5 NY2d 430, *supra); Matter of Burke v Village of Johnson City* (36 AD2d 202, affd 29 NY2d 846, *supra); Matter of Devens v Gokey* (12 AD2d 135, 137) and *Matter of Scuderi v Board of Educ. for City School Dist. of City of Yonkers* (49 AD2d 942).

In *Austin* the action was not for reinstatement, but for damages resulting from the former public employee's dismissal. The Court of Appeals upheld the dismissal of the action for failure to state a cause of action on the ground that the plaintiffs had failed to bring an article 78 proceeding for reinstatement, a necessary prerequisite to a successful action for lost salary. In so doing, the court stressed the legislative intent embodied in the short Statute of Limitations for article 78 proceedings as being "to assure expedition" and "to relegate a dismissed employee to the prompt remedy of an article 78 proceeding" *(Austin v Board of Higher Educ. of City of N.Y., supra,* p 441). The court also said (p 442): "it is necessary to make a demand and await a refusal before bringing a proceeding in the nature of mandamus and in the latter type of proceeding the Statute of Limitations does not run out until four months after the refusal (22 Carmody-Wait, New York Practice, § 289, pp. 378, 379). This does not mean that the aggrieved party can, by delay in making his demand, extend

indefinitely the period during which he is required to take action. If he does not proceed promptly with his demand he may be charged with laches (22 Carmody-Wait, New York Practice, §§ 289, 297, pp. 379, 388-390). In this connection it is noteworthy that it has been specifically held that delay on the part of one removed from office in demanding reinstatement, for which there is no excuse, constitutes laches, which is a good defense to his proceeding under article 78 (*Matter of Peruzzin v Test,* 282 App. Div. 550)."

In *Austin* the dismissals which were the basis of the action occurred in 1952 and 1953; the action for damages came years after the dismissals. In *Matter of Devens v Gokey (supra),* the proceeding for reinstatement was brought more than four years after the petitioner accepted disability retirement based upon his allegedly having been misled by his superior. In *Matter of Burke v Village of Johnson City (supra),* the proceeding for reinstatement was brought some 3 years after the petitioner's compelled retirement at the age of 62. In *Matter of Scuderi (supra),* the article 78 proceeding was brought more than one year after the initial suspension. Furthermore, in *Scuderi,* this court held that the defense of the Statute of Limitations had not been properly raised by the respondent, that the proceeding had in fact been filed within the statutory period from the date the petitioner's demand for reinstatement was denied and that, in any case, the delay would have been excusable because it was the result of respondent's failure to respond promptly to petitioner's numerous informal demands for service of charges and its statements during that period to petitioner and his representatives that charges were being prepared and would be forthcoming shortly. In the instant case, by contrast, the petitioner made his demand for reinstatement in less than two months, not an unduly long period or one calculated to prejudice the respondent. We hold that there is no merit to the respondent's claim of laches, especially since there is no indication in the record on appeal that respondent ever answered petitioner's letter of February 20, 1975 demanding reinstatement.

## THE IMPACT OF THE DUE PROCESS CLAUSE

The validity of the regulation here under consideration, section 5.3 (d) of the Rules and Regulations of the New York State Department of Civil Service, pursuant to which the petitioner's absence for 10 days without leave and without an

explanation was "deemed to constitute a resignation effective on the date of commencement of such absence", raises a serious due process issue insofar as it results in the termination of his permanent civil service position without his being allowed a hearing on the validity of the reason for the termination. While the regulation does not use the term "irrebuttable presumption", but speaks instead of the absence being "deemed to constitute a resignation", the fact is that it does, in effect, create an irrebuttable presumption as the affected employee is never given an opportunity to explain or justify the absence in a hearing either before or after it is "deemed" by his employer, the public agency, to constitute "a resignation". The civil service employment in which the petitioner had "achieved permanent status in March 1963" is clearly a thing of substantial value. It is also clear, therefore, that petitioner had a "property" interest in retention of his permanent civil service position—a protected interest under the due process clause of the Fourteenth Amendment to the Federal Constitution, of which his employer, an agency of the State, could not deprive him without affording him his essential procedural due process rights of notice and an opportunity for a hearing appropriate to the nature of the case, before the termination of his employment became effective (see *Board of Regents v Roth,* 408 US 564; *Perry v Sindermann,* 408 US 593). As the United States Supreme Court said in *Roth (supra,* p 570, n 7): "Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' *Boddie v Connecticut,* 401 U.S. 371, 379. 'While "[m]any controversies have raged about * * * the Due Process Clause," * * * it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate [a protected] interest * * *, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective.' *Bell v Burson,* 402 U.S. 535, 542."

The Supreme Court, in *Roth,* concluded that since the respondent was a *nontenured* teacher he had no interest in liberty or property sufficient to bring himself within the procedural due process protections of the Fourteenth Amendment, unless the State's refusal to rehire him involved a

charge against him which might seriously damage his standing and association in his community and that his dismissal without a hearing was therefore proper. But here, as in *Perry v Sindermann (supra),* the petitioner was not required to show that he had sustained serious damage to his standing and associations in his community resulting from his enforced resignation, i.e. dismissal, since he clearly had a property interest in the retention of his permanent civil service position sufficient to come within the orbit of the procedural due process rights protected by the Fourteenth Amendment.

Also relevant to the issue before us is the line of Supreme Court decisions embodied in *Bell v Burson* (402 US 535), *Stanley v Illinois* (405 US 645) and *Vlandis v Kline* (412 US 441). Those cases involved irrebuttable presumptions established in various statutes to facilitate achievement of an end found desirable by a legislature. They are relevant here because, as we have noted, the regulation under attack is one which, in reality, creates such a presumption. In each of the three cited cases the court struck down the statutes involved on the ground that the effect of the presumption was to deny those adversely affected thereby their procedural due process rights guaranteed in the Fourteenth Amendment.

In *Bell v Burson (supra),* the State of Georgia adopted a statute which provided that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident must be suspended unless he posted security to cover the amount of damages claimed by aggrieved parties in reports of the accident. While the statute provided for an adminstrative hearing prior to any such suspension, it also excluded from consideration in that hearing any question of the uninsured motorist's fault or liability for the accident. In striking down that statute the court said (p 539): "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. *Sniadach v. Family Finance Corp.* 395 U.S. 337 (1969); *Goldberg v Kelly,* 397 U.S. 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege' " (citing cases).

In *Stanely v Illinois (supra),* the court struck down a statute which established an irrebuttable presumption that the father of an illegitimate child could not become the guardian of such a child and that such children, upon losing their mother, became wards of the State. The court said (p 649): "Is a presumption that distinguishes and burdens all unwed fathers constitutionally repugnant? We conclude that, as a matter of due process of law, Stanley [the unwed father] was entitled to a hearing on his fitness as a parent before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment."

In *Vlandis v Kline (supra),* the United States Supreme Court struck down a Connecticut statute which required non-residents of the State enrolled in its State University system to pay tuition and other fees at higher rates than were paid by residents. The definition of nonresidents in the statute barred any nonresident from changing his status as such during his period of attendance in the Connecticut institutions of higher education, regardless of whether he actually changed his permanent residence to Connecticut during that period. The court said (p 446): "Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments. In *Heiner v Donnan,* 285 U.S. 312 (1932), the Court was faced with a constitutional challenge to a federal statute that created a conclusive presumption that gifts made within two years prior to the donor's death were made in contemplation of death, thus requiring payment by his estate of a higher tax. In holding that this irrefutable assumption was so arbitrary and unreasonable as to deprive the taxpayer of his property without due process of law, the Court stated that it had 'held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment.' *Id.,* at 329."

The rationale of those cases dictates the striking down of the regulation here under attack as violative of the due process guarantees of the Fourteenth Amendment. Nor do the Supreme Court's decisions in *Arnett v Kennedy* (416 US 134) and *Weinberger v Salfi* (422 US 749), cited by respondent,

require a different result. In *Arnett* the issue was whether the limited due process rights given to dismissed Federal civil service employees by the Lloyd-LaFollette Act accorded with the requirements of the due process clause of the Fifth Amendment. In rejecting his contention the court noted that the petitioner's dismissal was not such as to deprive him of the "liberty" protected by the Fifth Amendment against deprivation without due process, since the reason for his dismissal was not such as to seriously damage his standing and associations within the community. Therefore *Roth* governed the case. In *Weinberger* the issue involved was the eligibility of a widow with a dependent child for widow's and children's benefits under Social Security, where her marriage to the deceased spouse had not occurred more than nine months prior to his death, a condition, under the statute, of eligibility for such benefits. The court's majority held *Stanley* and *Vlandis* inapplicable to a " 'withholding of a noncontractual benefit under a social welfare program such as [Social Security]' " adding, " 'we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification' " (p 768). The court also said (at pp 771-772): "We hold that these cases are not controlling on the issue before us now. Unlike the claims involved in *Stanley* and *LaFleur* [414 US 632], a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, *Dandridge v Williams, supra* [397 US 471], though of course Congress may not invidiously discriminate among such claimants on the basis of a 'bare congressional desire to harm a politically unpopular group,' *U.S. Dept. of Agriculture v Moreno,* 413 U.S. 528, 534 (1973), or on the basis of criteria which bear no rational relation to a legitimate legislative goal."

Petitioner rightfully contends that, since he was a person holding a permanent position in the classified civil service of the State of New York, disciplinary proceedings instituted against him were required to be brought in accordance with section 75 of the Civil Service Law. That section provides for procedures which include service of written notice of the proposed disciplinary action, of the reasons therefor and of a copy of the charges, time to answer the charges in writing, a hearing before the officer or body having the power of removal of the person charged, the keeping of a record of the hearing, the right to be represented by counsel and the right to call

witnesses on one's behalf. Furthermore, the burden of proof of incompetency or misconduct is on the maker of the charges. The procedures outlined in section 75 thus meet the procedural due process requirements of the Fourteenth Amendment. Here, respondent elected to avoid the procedures established by section 75 and instead utilized section 5.3 (d) of the Rules and Regulations, thus avoiding the need to give petitioner a hearing after due service of charges upon him. We hold that it could not constitutionally do so.

Nor can *Matter of Dunn v Simon* (16 AD2d 719, *supra),* upon which Special Term relied in its opinion in support of the judgment appealed from, serve to sustain its conclusion that the respondent's use of section 5.3 (d) of the Rules and Regulations "to get rid" of the petitioner and "secure his discharge" validate the action of the respondent in accepting his "resignation". That case, decided in April, 1962, many years prior to the decisions of the United States Supreme Court in *Bell v Burson* (402 US 535, *supra), Stanley v Illinois* (405 US 645, *supra), Board of Regents v Roth* (408 US 564 *supra), Perry v Sindermann* (408 US 593, *supra)* and *Vlandis v Kline* (412 US 441, *supra),* which made clear the applicability of the procedural due process guarantees of the Fourteenth Amendment to dismissals of government employees with tenure, did not even consider the application of the due process clause to the dismissal there attacked by the petitioner, a government civil service employee, under a rule similar to section 5.3 (d) here under attack. There, as here, the petitioner had been absent without leave from his position in the competitive class of the civil service for over a month. There, as here, the petitioner alleged that the absence was due to illness. There, as here, the Special Term dismissed the petition. But the sole contentions presented there were that the petitioner was entitled to a hearing under section 75 of the Civil Service Law and that the rule applied was invalid as in conflict with section 75. The issue of the petitioner's due process rights was neither raised nor considered. The court dismissed the petition on the basis that it found no inconsistency between the rule and the statute, saying (p 720): "Each was designed to provide a separate and distinct method within the State civil service complex for the severance of employment, the former by self-abdication and the latter by compulsion after a hearing upon charges of incompetency or misconduct."

But in this case there was in fact no "self-abdication" but, rather, the use of a device to dismiss petitioner which was apparently believed to be quicker than the required hearing procedure. Such motives, even if laudable, may not be achieved at the expense of petitioner's constitutionally guaranteed due process rights. And *Matter of Dunn,* since the due process question was not presented in it, apparently gave no consideration to that question. Insofar as it may be deemed to have done so, we decline to follow it.

The judgment appealed should therefore be reversed, on the law, and section 5.3 (d) of the Rules and Regulations of the Civil Service Commission, as applied to this petitioner, should be declared unconstitutional, with petitioner being granted reinstatement effective December 10, 1974, with back pay and any other benefits to which he may be entitled by virtue of his position, less the amount of compensation earned in any other employment or occupation and any unemployment benefits he may have received during such period.

GULOTTA, P. J., HOPKINS, LATHAM and MARGETT, JJ., concur.

Judgment of the Supreme Court, Kings County, entered October 29, 1975, reversed, on the law, with $50 costs and disbursements, petition granted and it is declared that section 5.3 (d) of the Rules and Regulations of the Department of Civil Service, as applied to the petitioner, is unconstitutional. Respondent is directed to reinstate petitioner with back pay, less the amount of compensation earned in any other employment or occupation and any unemployment benefits he may have received during such period. No fact findings were presented for review.