Wilma GREENE and Clarence Callis, Plaintiffs,

v.

Honorable Robert McGUIRE, Police Commissioner of the City of New York; Honorable Robert Abrams, Attorney General of the State of New York, and Honorable Hugh Carey, Governor of the State of New York, Defendants.

No. 80 Civ. 5020 (GLG).

United States District Court,
S. D. New York.

July 17, 1981.

named in this action are New York City Police Commissioner Robert J. McGuire, Attorney General Robert Abrams, and Governor Hugh Carey. Both plaintiffs were convicted of felonies, which resulted in an automatic forfeiture of their public offices pursuant to subsection 30(1)(e) of the New York Public Officers Law (McKinney Supp. 1980).[1] The convictions were reversed some years later by the Appellate Division and the indictments dismissed. *People v. Cona*, 60 A.D.2d 318, 401 N.Y.S.2d 239 (2d Dep't 1978). The New York Court of Appeals affirmed the Appellate Division decision. 49 N.Y.2d 26, 399 N.E.2d 1167, 424 N.Y.S.2d 146 (1979). Plaintiffs then made timely application for reinstatement to their former positions as police officers along with back pay. Their applications were denied without a hearing.

Plaintiffs now seek summary judgment declaring unconstitutional subsection 30(1)(e) of the New York Public Officers Law as violative of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[2] (Plaintiffs also seek reinstatement with back pay.)

Robert E. Green, Forest Hills, N. Y., for plaintiffs.

Allen G. Schwartz, Corp. Counsel of the City of New York, New York City, for defendants by Rosemary Carroll, New York City, Gerald C. Sternberg, Special Asst. Corp. Counsel, Riverdale, N. Y., by designation.

GOETTEL, District Judge:

Plaintiffs Wilma Greene and Clarence Callis are former members of the New York City Police Department. Defendants

Plaintiffs' due process claim challenges the vacatur provision of subsection 30(1)(e), which automatically deprives a public officer of his office upon conviction of a felony or certain misdemeanors without providing for a stay pending appeal or for a hearing in the event of a subsequent reversal. The equal protection challenge is predicated on the allegation that subsection 30(1)(e) is not rationally related to some legitimate state interest.

For the reasons set forth below, plaintiffs' motion for summary judgment is hereby granted in part.[3] Plaintiffs are en-

1. Public officers include state and locally elected officials, as well as peace officers and other appointed officials. *See* N.Y.Pub.Off.Law § 2 (McKinney 1952). *Accord, Haller v. Carlson*, 42 A.D.2d 829, 346 N.Y.S.2d 108 (4th Dep't 1973); *Fishbein v. State*, 282 A.D. 600, 125 N.Y.S.2d 845 (3d Dep't 1953).

Subsection 30(1) of the New York Public Officers Law provides:

Every office shall be vacant upon the happening of one of the following events before *the expiration of the term thereof:*

\* \* \* \* \* \*

(e) His [the incumbent's] conviction of a felony, or a crime involving a violation of his oath of office; ...

2. Defendants have also cross-moved for summary judgment.

3. Both plaintiffs and defendants have sub-

titled to a hearing for the sole purpose of determining whether their conduct should bar reinstatement to their former positions without back pay.

*Due Process*

The Fourteenth Amendment guarantees that a person will not be deprived of life, liberty, or property without due process of law. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the ... Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).

In determining whether due process is offended in the instant case, it is necessary to inquire whether plaintiffs had a protected interest, which, under the circumstances, they were deprived of without due process. *See Meachum v. Fano*, 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–2538, 49 L.Ed.2d 451 (1976); *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). Should an interest protected by the Fourteenth Amendment be found, it would then be necessary to determine what procedures will provide due process. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
>
> Property interests, of course, are not created by the Constitution. Rather,

they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

The Court has expressed those views in other cases as well. *See Arnett v. Kennedy*, 416 U.S. 134, 151, 94 S.Ct. 1633, 1642–1643, 40 L.Ed.2d 15 (1974); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ Under New York law, it appears that plaintiffs' prior status as permanent civil service employees vested them with a property interest in their former positions.[4] *See Economico v. Village of Pelham*, 50 N.Y.2d 120, 405 N.E.2d 694, 428 N.Y.S.2d 213 (1980); *Johnson v. Director, Downstate Medical Center*, 52 A.D.2d 357, 384 N.Y.S.2d 189 (2d Dep't 1976), *aff'd*, 41 N.Y.2d 1061, 364 N.E.2d 837, 396 N.Y.S.2d 172 (1977) (per curiam). *Cf. Baden v. Koch*, 638 F.2d 486 (2d Cir. 1980). While a police officer may be suspended for suspected misconduct, N.Y.C.Adm.Code § 434a–20.0, specific due process requirements must be complied with before a police officer with permanent civil service status can be disciplined or dismissed from the force. N.Y.Civ.Serv.Law § 75 (McKinney 1973 & Supp.1980).

This is not to imply that plaintiffs were entitled to a hearing prior to their forfeiture of public office. The New York Court of Appeals has held that, under subsection 30(1)(e) of the New York Public Officers Law, a felony conviction of a public officer will automatically result in that office becoming vacant. *See Toro v. Malcolm*, 44 N.Y.2d 146, 149–50, 375 N.E.2d 739, 741, 404 N.Y.S.2d 558, 561 (1978). Whatever proper-

---

mitted Rule 3(g) statements. There appear to be no material issues of fact precluding the granting of summary judgment.

**4.** In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court held that a former police officer, who was discharged without a hearing, had no protected property interest in his former position even though North Carolina law classified him as a permanent employee. This conclusion was

based upon the lower court's having found that under North Carolina law, he "held his position at the will and pleasure of the city." *Bishop v. Wood*, 377 F.Supp. 501, 504 (W.D.N.C.1973), *quoted in* 426 U.S. at 345 & 346 n.9, 96 S.Ct. at 2077 & 2078 n.9. The instant case is very different, however, since, under New York law, plaintiffs had a property interest in their former positions.

ty interest existed in that office is extinguished on conviction under the law of New York, *Economico v. Village of Pelham, supra,* 50 N.Y.2d at 126, 405 N.E.2d at 697, 428 N.Y.S.2d at 215–16, and the reversal of a conviction will not entitle the former public officer to automatic reinstatement even though the disability is removed. *Toro v. Malcolm, supra,* 44 N.Y.2d at 150, 375 N.E.2d at 741, 404 N.Y.S.2d at 561; *Sroka v. Municipal Civil Service Commission of City of Buffalo,* 57 A.D.2d 1064, 395 N.Y. S.2d 854 (4th Dep't 1977). A police officer holds a position of utmost public trust and is in a class separate from most other civil service employees. *Baker v. Cawley,* 459 F.Supp. 1301, 1305 (S.D.N.Y.1978), *aff'd without opinion,* 607 F.2d 994 (2d Cir. 1979). "The slightest suspicion cast upon the honesty and integrity of the police officer makes his services to the Department and to the public, at best, doubtful." *Id.* at 1306 (quoting *Cugell v. Monaghan,* 201 Misc. 607, 611, 107 N.Y.S.2d 117, 122 (S.Ct.N.Y.Co. 1951)). A stay of the subsection 30(1)(e) vacatur provision pending appeal would therefore have been inappropriate under the circumstances.

 In the instant case, however, plaintiffs' convictions were ultimately reversed. The circumstances that led to the application of subsection 30(1)(e) no longer exist. It is inherently unfair to preclude even the *possibility* of plaintiffs' ever regaining their former positions. Although plaintiffs are not entitled to automatic reinstatement or back pay, they are at least entitled to have their situation reconsidered under the same procedures that are used for removing civil servants not convicted of felonies.

The requirements of procedural due process stand as a bulwark against arbitrary governmental deprivation of an individual's property without first providing him an opportunity to be heard and defend against the charges being made. *Fuentes v. Shevin,* 407 U.S. 67, 80–81, 92 S.Ct. 1983 (1972). Now that plaintiffs' convictions have been reversed, the continued deprivation of their former positions is arbitrary unless they are afforded a hearing to determine their fitness to hold their former positions. A prompt hearing is the only guarantee against further unjustified deprivation of a valuable property interest. *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). While plaintiffs' forfeiture of office was justified upon their felony convictions, once the convictions were reversed, further deprivation can only be based on proof that plaintiffs are guilty of misconduct serious enough to bar reinstatement to their former positions, assuming the positions are available.

A second important consideration is that plaintiffs' liberty interest in obtaining further employment may be affected even though their convictions have been reversed. *See Board of Regents v. Roth, supra,* 408 U.S. at 572–75, 92 S.Ct. at 2706–2708; *Velger v. Cawley,* 525 F.2d 334, 336 (2d Cir. 1975). Therefore, the gravity of the stigma and the resulting potential deprivation requires an opportunity to be heard. *See Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

The Supreme Court has recently reaffirmed the principle that due process is not a "technical conception" divorced from the surrounding circumstances. In *Lassiter v. Department of Social Services,* —— U.S. ——, ——, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981), the Court stated that "due process"

> expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

This Court has carefully weighed the consequences of not requiring a hearing and has determined that precedent as well as the interests at stake render it fundamentally unfair to deny plaintiffs an opportunity to regain their former positions.

Prior New York State court decisions have never reached the precise issue of whether due process requires that a hearing be afforded where there is a reversal of the same conviction that brought about the vacatur of office. In *In re Obergfell*, 239 N.Y. 48, 145 N.E. 323 (1924), the elected mayor of the city of Long Beach was convicted of a felony, which, under what was then subsection 30(5), caused an immediate vacancy in that office. After sentencing, an appeal was taken, which resulted in the issuance of a certificate of probable cause and a stay of sentence. The New York Court of Appeals held that the possibility that the conviction may be reversed will not defeat the section 30 vacatur provision. In *Sroka v. Municipal Civil Service Commission of City of Buffalo, supra*, a former police officer petitioned for reinstatement with back pay after his conviction was reversed and the indictment dismissed. The court denied reinstatement *with back pay* on the strength of the automatic vacatur provision, without reaching the issue of whether due process may require a *hearing* as to reinstatement without back pay. The significance of the back pay aspect is illustrated by *Toro v. Malcolm, supra*, where a former New York City correction officer was voluntarily reinstated to his former position after his conviction was reversed. After reinstatement, plaintiff sought back pay from the date of his arrest to the date of his reappointment. The court upheld the denial of back pay on the basis of the plaintiff's not having been a correction officer during the intervening period.

The instant case is distinguishable from *Obergfell, Sroka,* and *Toro.* In *Obergfell,* the plaintiff's conviction had not been reversed at the time when the section 30 vacatur provision was being challenged. In addition, the plaintiff was not seeking reinstatement, but only a postponement of a special election to fill his former office. *Sroka* is also distinguishable, since the former police officer in that case was apparently seeking automatic reinstatement on the ground that his conviction had been reversed. This Court does not hold that plaintiffs are entitled to automatic rein-

statement to their former positions. Plaintiffs will be afforded a hearing for the sole purpose of determining whether their conduct should bar their reinstatement to their former positions. *Toro* is also clearly distinguishable. The only issue there was whether back pay should be awarded to a former correction officer who was voluntarily reinstated after his conviction was reversed. This Court agrees that, since vacating of an office upon a felony conviction is proper, and since, under the automatic forfeiture provision of subsection 30(1)(e), plaintiffs were lawfully deprived of their offices as of the date of their felony convictions, they are not entitled to back pay for the period prior to the reversal of their convictions.

In reaching the conclusion that plaintiffs must be afforded a hearing, a distinction must be drawn between a police officer and other elected or appointed public officers. Defendants assert that once plaintiffs were convicted of a felony, their offices immediately became vacant by operation of subsection 30(1)(e) and, since the vacancies have already been filled, it is impossible to reinstate plaintiffs to their former positions. While many public offices are unique, police officers are members of a force where few persons occupy discrete positions. Members of a police force, especially one as large as New York City's, are added or removed continually without any major expense or inconvenience to the police department or to the public at large. Thus, it appears that a police officer could be reinstated without any real hardship to the police department. This may not be true of certain other public officers, and the Court expresses no view as to them.

*Equal Protection*

■ In light of this Court's disposition of this matter on due process grounds, plaintiffs' equal protection claim need not be considered at length. It should be noted, however, that the State of New York and all of its citizens have a legitimate interest in ensuring the honesty and integrity of persons vested with public authority. Requiring that public officers convicted of a felony must forfeit all entitlement to an

office of public trust is one way of achieving that goal. Subsection 30(1)(e), contrary to plaintiffs' claim, therefore, appears to be rationally related to serving a legitimate state purpose. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

SO ORDERED.