OPINION of the court
Richard Lee Price, J.
This is a motion to reargue an earlier motion brought by the present movant, the respondent, to dismiss the petition. By a decision dated May 20, 1982 (114 Misc 2d 697), this court denied that motion and instructed the respondent to answer the petition. Respondent has chosen instead to bring this motion to reargue.
In my decision of May 20, 1982, I declined to grant respondent’s motion to dismiss, in large part because of a decision by the Southern District, Greene v McGuire (517 F Supp 1330), which provided a basis for me to find that the petitioner here possessed a cause of action and therefore precluded dismissal. Since the date of that decision, the Second Circuit Court of Appeals reversed the Southern District (Greene v McGuire, 683 F2d 32). Respondent now moves for reargument on that basis.
*965 Respondent’s appreciable position is that the reversal of Greene (supra) mandates the rescission of this court’s prior order. Petitioner’s equally natural position is that this case is distinguishable both from the Second Circuit’s decision in Greene and its underlying State case, Matter of Toro v Malcolm (44 NY2d 146), and the prior order of this court should stand.
I believe the Second Circuit impermissibly extended the law of Matter of Toro v Malcolm (supra), and am convinced that it failed to consider the entirety of New York law in reaching its decision. I therefore hold that this State court will not follow what I believe to be an incorrect interpretation by a Federal court of State law. I grant reargument, but upon reargument, I adhere to my original decision, with one exception.
LEGAL BACKDROP OF THE SECOND CIRCUIT “GREENE” DECISION
The petitioners (actually plaintiffs) in Greene (supra) were former New York City police officers who were convicted of bribery. Upon their conviction, their “offices were vacated” in accordance with section 30 (subd 1, par e) of the New York Public Officers Law. Thereafter, petitioners’ convictions were reversed, on the law, and the indictments against them were dismissed.
As a result of the reversal, the officers sought reinstatement and back pay. Both were denied without a hearing. Petitioners subsequently brought suit in the Southern District pursuant to section 1983 of title 42 of the United States Code alleging that section 30 (subd 1, par e) of the Public Officers Law violated the due process and equal protection clauses of the Fourteenth Amendment.
The Southern District held that while the section does not violate the equal protection clause (in that section 30 [subd 1, par e] appears to be rationally related to the service of a legitimate State purpose) it does violate the due process clause.
In so holding, the court first found the existence of a “property interest”. This it did by reference to New York law, which clearly establishes that, vacatur notwithstand *966 ing, permanent civil service employees are vested with a property interest in their positions. (517 F Supp, at p 1332.)
The court also noted provisions of a competing New York statute that establishes due process procedures that must be employed before a permanent civil service employee may be disciplined or dismissed. (517 F Supp, at p 1332, citing Civil Service Law, § 75.)
The court acknowledged that upon their convictions, petitioners Wilma Greene and Clarence Callis lost whatever property interest they possessed by operation of section 30 (subd 1, par e) of the Public Officers Law. But upon reversal of those convictions, because of “insufficient evidence due to lack of sufficient, independent (non-accomplice) corroboration”, the court held that “the circumstances that led to the [operation] of subsection 30 (1) (e) no longer exist.” (Greene v McGuire, 517 F Supp 1330, 1333, supra.) The court held that upon reversal the requirements of due process “entitled [petitioners] to have their situation reconsidered under the same procedures that are used for removing civil servants not convicted of felonies” (supra, p 1333).
In addition to the above primary holding, the District Court reached other, also significant conclusions:
(1) Petitioners were not entitled to a pretermination hearing upon their conviction;
(2) Petitioners were not entitled to automatic reinstatement upon reversal of their convictions;
(3) Operation of section 30 (subd 1, par e) of the Public Officers Law will not be stayed pending appeal of the conviction;
(4) No prior New York decision has reached this precise issue;
(5) Matter of Toro v Malcolm (44 NY2d 146, supra) should be confined to its particular fact pattern and limited holding, namely: a discharged civil employee whose conviction is reversed is not entitled to back pay for the period prior to the reversal of a conviction upon voluntary reinstatement;
(6) Greene (supra) is distinguishable from Bishop v Wood (426 US 341) in that the discharged civil employee in *967 Bishop was found to have possessed no property interest in his former position prior to discharge.
The court also noted that the petitioners’ liberty interests were also affected, in that they might have difficulty “obtaining further employment * * * even though their convictions have been reversed.” (517 F Supp, at p 1333.) In conclusion, the District Court noted that there is a difference between police officers and “other elected or appointed public officers”, in that while many public offices may be “unique”, a police officer is a member of a force. The court noted that it is the nature of a large force that many members are routinely added or expelled without great expense or difficulty. (517 F Supp, at p 1334.)
SECOND CIRCUIT’S REVERSAL OF GREENE
In reversing the Southern District, the Second Circuit noted with extreme significance that while the accomplice testimony was insufficient to convict the petitioners under New York law, it would have been sufficient to discharge them or to deny them their jobs upon hearing for reinstatement. (Greene v McGuire, 683 F2d 32, 34, supra.)
So stating, the court held that under New York law petitioners lost whatever property interest they had in their jobs upon their conviction of a felony. The court looked upon section 30 (subd 1, par e) of the Public Officers Law as a condition of petitioners’ employment that had been violated, and once violated, all rights were permanently extinguished.
In reaching this decision the court placed particular emphasis on the right of the public to depend upon the morality of police officers. (683 F2d, at p 34, citing Matter of Toro v Malcolm, supra.) A felony conviction, notwithstanding reversal, shatters the ideal.
The court based its decision upon Matter of Toro v Malcolm (supra), which it found to preclude a court’s exercise of its power to order reinstatement or an award of back pay, or to order a hearing on the matter. The court found no due process violation under Bishop v Wood (supra), because under State law (Matter of Toro v Malcolm, supra), at the present time, petitioners possess no property interest in their former positions.
*968 In a lengthy concurrence, Judge Oakes reluctantly agreed with the majority, noting that he felt bound by the “questionable” rule of Bishop v Wood (426 US 341, supra), and the “unnecessary” holding in Matter of Toro v Malcolm (44 NY2d 146, supra). Judge Oakes felt the holding in Toro was unnecessary under New York law because of the well-established law in New York that permanent civil service employees have a property and liberty interest in their employment, and the statutory procedures that provide for protection of those interests. Judge Oakes also noted that New York law has provided for “post-termination” hearings in other contexts. (683 F2d, at p 37.)
BASIS OF GREENE REVERSAL — AN ANALYSIS OF BISHOP V WOOD
AND MATTER OF TORO V MALCOLM
A brief analysis of Bishop v Wood (supra) is necessary to understand the Second Circuit’s decision in Greene (supra) and to effectively repudiate it.
Briefly stated, Bishop v Wood (supra) involved a police officer who was fired for “poor performance” without a pretermination hearing, and was found by the majority of the Supreme Court not to possess a right to a posttermination hearing. The majority reached this decision by reference to State law (North Carolina) which, at best, provided an ambiguous basis for the majority’s opinion.
In Bishop (supra) the police officer was subject to the regulations of a city ordinance under which he could be discharged for failing to satisfactorily perform his duties, and was entitled to notice and, if requested, reasons for the discharge. Petitioner contended that as a permanent civil service employee he could be discharged only for cause, giving rise to a property interest in his continued employment.
The majority, while agreeing that the ordinance on its face appeared to offer such a guarantee, nevertheless found that under North Carolina law petitioner held his position “at will.” The majority reached this decision by reference to the lower (district) court’s construction of the ordinance in the case before it, for no State case law existed. That lower court had held that while the ordinance provided proce *969 dures to be followed before dismissal, namely, notice and provision of reasons for dismissal upon request, once those minimal requirements were fulfilled, the petitioner possessed no further rights. In short, State law may create a right and may also prescribe the procedures (however minimal) that must be employed before taking that right. The majority also denied petitioner the right to a name-clearing hearing.
The dissenters in Bishop v Wood (supra) were many and vociferous in their objections. The chief aim of the dissenters was to note (p 353) their belief that there is a “federal dimension to the definition of ‘property’ in the Federal Constitution”, which precludes a State from limiting a property right once given, and that dismissal of a police officer for “conduct unbecoming an officer” is sufficiently stigmatic to require, at the very least, a name-clearing hearing.
But the primary directive of the majority decision is to refer a court analyzing a possible violation of a permanent civil service employee’s due process rights to State law. And in New York the seminal case is Matter of Toro v Malcolm (supra).
In Toro (supra), a correction officer was convicted of burglary, petit larceny and impersonating a police officer, and upon his conviction he was dismissed pursuant to section 30 (subd 1, par e) of the Public Officers Law. Thereafter the officer’s conviction was reversed, because “the complainant’s eyewitness * * * [testimony against him] was tainted and should have been suppressed.” (44 NY2d, at p 149.) The only other evidence was the uncorroborated testimony of an accomplice. The officer was thereafter voluntarily reinstated.
Considering the above a reversal on the basis of a “legal technicality”, the New York Court of Appeals held that the officer was not entitled to an award of back pay covering the period between conviction and voluntary reinstatement. The court, in dicta, discussed the apparent purpose of section 30 (subd 1, par e) as a desire by the Legislature to permit “[c]ontinued performance of governmental functions necessitating] the existence of a point in time at *970 which the affected office may be filled without concern for the possibility that at some future date a former officer’s conviction may be reversed.” (44 NY2d, at p 150.) The court held that, therefore, by operation of section 30 (subd 1, par e), it lacked the power to order either reinstatement or an award of back pay.
To further explain itself, the court posited the extreme situation, the conviction of an innocent defendant, and labeled that situation as merely “tragic”. Notwithstanding this reference to a possibly innocent defendant, the court appeared to distinguish the case before it, noting “[wjhere a conviction is reversed for a legal technicality in no way indicative of innocence, the public should not be required to pay the officer’s salary until its interest is ultimately vindicated.” (Matter of Toro v Malcolm, 44 NY2d 146, 151, supra.)
At no time did the majority in Matter of Toro v Malcolm (supra) mention section 75 of the Civil Service Law or any New York case dealing with the application of that statute.
Judge Fuchsberg’s dissent in Toro (supra) was vigorous and thorough. Judge Fuchsberg (joined by Judge Wachtler) took preliminary exception to the majority’s characterization of the reversal of the petitioner’s conviction as based upon a “legal technicality”, noting that the charges were dismissed against the petitioner “on the merits both on the facts and on the law” (44 NY2d, at p 153, citing People v Toro, 44 AD2d 848). Under the Appellate Division’s recitation of the facts leading to the reversal in People v Toro (supra), Peter Toro could well have been the posited “innocent man” alluded to by the majority, rather than an individual whose “conviction is reversed for a legal technicality in no way indicative of innocence” (Matter of Toro v Malcolm, supra, p 150).
Judge Fuchsberg noted that section 30 (subd 1, par e) is completely silent on the issue of possible reversal, and stated the New York law that “a statute [must] not be unnecessarily interpreted in a manner resulting in * * * unconscionable treatment” (Matter of Toro v Malcolm, supra, p 153).
Judge Fuchsberg found Matter of Obergfell (239 NY 48) distinguishable, noting that in that case the court was *971 faced with a Mayor (an elected official) who was seeking to avoid the operation of section 30 (subd 1, par e) of the Public Officers Law pending the appeal of his conviction. The case “did not determine * * * the effect of an unmistakable and unqualified final exoneration.” (44 NY2d, at p 155.)
HOW (and why) the second circuit impermissibly EXTENDED THE RULE OF “TORO”
The issue now before me is whether, under New York law, a permanent civil service employee whose office has been vacated upon his or her conviction of a felony, by operation of section 30 (subd 1, par e) of the Public Officers Law, possesses a property interest in his or her former employment, entitling him or her to due process protection, upon reversal of that conviction.
I respond to this issue in the affirmative, in accordance with the foregoing analysis.
A. THE EXISTENCE OF A PROPERTY INTEREST UNDER NEW YORK LAW
Subdivision 2 of section 75 of the Civil Service Law provides that prior to the dismissal or suspension of any permanent civil service employee the body contemplating disciplinary action must:
(1) Provide written notice of the action and the reasons behind it
(2) Afford the employee an opportunity to answer the charges in writing
(3) Conduct a hearing, wherein the employee is entitled to legal or union representation, and to summon witnesses on his or her behalf
(4) Carry the burden of proving incompetency or misconduct.
The statute further provides that compliance with technical rules of evidence is not required during the hearing, and a charged employee may be suspended with or without pay pending the hearing and determination for a period not exceeding 30 days. (Civil Service Law, § 75, subd 3.)
*972 If the employee is found guilty he or she may receive a reprimand, a fine, suspension, demotion or dismissal. If acquitted, the employee must be restored to his or her position with full back pay, minus any amounts earned as wages or received as insurance payments.
Under New York law a permanent civil service employee, by virtue of section 75 of the Civil Service Law, may not be dismissed without a pretermination hearing, and is therefore considered to possess a property interest in his or her position. (Matter of Economico v Village of Pelham, 50 NY2d 120.)
Probationary or provisional employees do not possess such an interest, and must demonstrate facts justifying a “name-clearing hearing” in order to receive even the slightest protection. (Matter of Anonymous v Codd, 49 AD2d 826, affd 40 NY2d 860.)
A case demonstrating the seriousness with which section 75 of the Civil Service Law is viewed is Matter of Johnson v Director, Downstate Med. Center (52 AD2d 357, affd 41 NY2d 1061). In that case a permanent civil service employee was dismissed by operation of section 5.3 (d) of the Rules and Regulations of the Department of Civil Service (4 NYCRR 5.3 [d]) that allowed an irrebuttable presumption to be drawn that an employee had resigned, after an absence of 10 workdays without justification or explanation.
The Second Department held that by virtue of the procedures outlined under section 75 of the Civil Service Law, the Fourteenth Amendment due process clause required a pretermination hearing prior to dismissal, notwithstanding 4 NYCRR 5.3 (d) and declared that provision unconstitutional.
The Court of Appeals declined to address the constitutional aspects in Johnson (supra), yet stated that the provision was invalid in that it was inconsistent with the clear legislative mandate of section 75 of the Civil Service Law.
It is this aspect of New York law that led the District Court in Greene (517 F Supp 1330, supra) to conclude that Greene was therefore distinguishable from Bishop v Wood *973 (426 US 341, supra). I find it indisputable that prior to conviction a permanent civil service employee does possess a property interest in his or her employment, and prior to termination of that employment the employee must be afforded the procedures outlined in section 75 of the Civil Service Law, at the very least.
But the law is equally clear in New York that upon conviction the right outlined above is extinguished. By that I mean that a civil service employee may neither be awarded back pay for the period during which his or her office was lawfully vacated (i.e., the period between conviction and reversal), nor may the operation of section 30 (subd 1, par e) of the Public Officers Law be stayed pending the appeal of the conviction. It is equally clear that once a conviction is reversed, the employee is not entitled to automatic reinstatement, but must be evaluated and given an opportunity to be heard as any other employee who is charged with misconduct. In other words, while a civil service employee discharged by operation of section 30 (subd 1, par e) is not entitled to a pretermination hearing, he or she is, upon reversal of that conviction, entitled to a posttermination hearing. I do not believe that the law of Matter of Obergfell (239 NY 48, supra) or Matter of Toro v Malcolm (44 NY2d 146, supra) require a different conclusion, and I point to additional New York precedent to support this belief.[1]
The real issue before me, as I see it, is whether section 30 (subd 1, par e) vacates the “office” of a “public officer” permanently and unconditionally, or whether its operation should be construed subject to a condition, namely, the existence of a conviction.
*974 In 1943 the Court of Appeals, in People v Nitzberg (289 NY 523, 530), held that “the courts give no effect to a judgment which has been reversed.” Similarly, in People v Bach (61 Misc 2d 630, 631), the court held that when the defendant’s conviction was reversed it was as if “her judgment of conviction and the record of her former trial became annulled as though they never had been”.
While these two cases do not deal with an interpretation of the operation of section 30 (subd 1, par e) of the Public Officers Law, and are instead based upon an interpretation of section 544 of the Code of Criminal Procedure (which was replaced by CPL 470.55), they do provide a suggestion of this State’s attitude and policy with respect to convictions that have been reversed. And while the new CPL 470.55 fails to specifically refer to the effect of reversal upon a conviction, section 544 of the Code of Criminal Procedure (and those cases decided pursuant to it) has in no sense been repealed. Even if it had been, the court in Nitzberg (supra, p 530) stated “even without a statute the courts give no effect to a conviction which has been reversed” (emphasis added).
The present CPL does provide the following:
Section 470.20
“Upon reversing or modifying a judgment, sentence or order of a criminal court, an intermediate appellate court must take or direct such corrective action as is necessary and appropriate both to rectify any injustice to the appellant resulting from the error or defect which is the subject of the reversal or modification * * *
“2. Upon reversal of a judgment after trial for legal insufficiency of trial evidence, the court must dismiss the accusatory instrument.”
The apparent purpose of CPL 470.20 is reminiscent of the frustrated exclamation of Judge Fuchsberg in his dissent in the Toro case, where he queried (44 NY2d, at p 154): “Is it not a fundamental precept of justice that, once it is finally decided that an accused has been falsely charged and, on this basis, has proved guiltless, he is, so far as *975 reasonably possible, to be treated as though he had never been accused at all?”
I believe the answer to that challenge is “yes” and that that answer is supported by both case and statutory precedents.
In further support of my decision that the operation of section 30 (subd 1, par e) is subject to a condition, namely, the existence of a “conviction”, I point to the law of New York concerning statutory construction. In so doing, I note the following rules of State law:
(1) When two statutes (or more) deal with the same subject (here, Public Officers Law, § 30, subd 1, par e; Civil Service Law, § 75; CPL 470.20) they must be interpreted “to harmonize * * * if possible, and not to perpetuate discordant interpretations”. (Matter of Gunning v Codd, 65 AD2d 415, 418 [seeking to harmonize provision of the Administrative Code, i.e., retirement benefits and Public Officers Law, § 30, subd 1, par e]; see, also, Johnson v Director, Downstate Med. Center, 52 AD2d 357, supra [Administrative Code provision allowing resignation by operation of law held invalid upon attempt to harmonize Civil Service Law, § 75].)
(2) A statute will not be construed to effect unjust, absurd, or unreasonable results. (Zappone v Home Ins. Co., 55 NY2d 131, 137, citing McKinney’s Cons Laws of NY, Book 1, Statutes, § 111, pp 233-234.)
(3) A statute that takes away a statutorily granted right (as Public Officers Law, § 30, subd 1, par e, takes away the rights given in Civil Service Law, § 75) will be strictly construed. (Matter of Matzner, 96 Misc 2d 198.)
(4) Strict construction of a statute is that which confines its operation to cases that are clearly within its spirit or reason, resolving all reasonable doubts against applicability of the statute to a particular case. (Kyritsis v Fenny, 66 Misc 2d 329.)
Given the rules above, I believe the Second Circuit in Greene (683 F2d 32, supra) could easily have held that, taking New York law as a whole, the petitioners in Greene were entitled to a posttermination hearing upon the reversal of their convictions. I believe this holding would have *976 done no violence to the mandate of section 30 (subd 1, par e) of the Public Officers Law and would have recognized the existence of the rights created by section 75 of the Civil Service Law.
I believe such a holding would have effectively harmonized the affected statutes, would have provided a construction of section 30 (subd 1, par e) that is not unjust, and would have allowed for its strict construction given the nature of its command as the forfeiture of a right.[2]
B. THE APPLICATION OF THE FOREGOING PETITIONER BRIGGINS
Charles Briggins, the petitioner, began his work as a police officer on September 26, 1966. On March 1, 1975, Briggins was arrested for forgery, and on March 12, 1975, the respondent police commissioner filed an administrative complaint charging petitioner with forgery and false identification.
Petitioner was suspended by the respondent on November 10,1976, as a result of his conviction on that same date. He was dismissed on February 2,1977, pursuant to section 30 (subd 1, par e) of the Public Officers Law.
On May 6, 1980, the petitioner’s conviction of forgery was reversed by the New York Court of Appeals on the grounds that no crime had in fact been committed. Specifically, the court held that Briggins’ . adoption of the use of a fictitious name, without evidence of fraudulent use or intent, was similar to Samuel Clemens’ adoption of the name “Mark Twain” and did not constitute the crime of forgery. The conviction was unanimously reversed and the indictment was dismissed.
Upon the reversal of his conviction, Briggins applied for reinstatement. As a result of that request Briggins appeared before a deputy trial commissioner charged with the original allegations of misconduct (forgery and false identification), and was informed that “if the matter [were] *977 tried administratively [the] tribunal would have no choice but to dismiss the subject Charges and Specifications as * * * legally insufficient.”
On March 5,1981, an investigative report was issued by the department advocate alleging that Briggins was guilty of separate and distinct uncharged instances of misconduct (also crimes) and recommending that Briggins be refused reinstatement because “there is no Departmental obligation to provide the applicant with a hearing, and the facts in this matter warrant no hearing.” That report and the deputy trial commissioner’s decision of December 11,1980, was adopted by the respondent and petitioner’s request for reinstatement or hearing was denied on July 16, 1981.
Upon that refusal, petitioner brought this article 78 proceeding for an order:
(1) Annulling the determination of the respondent and
(2) Directing the respondent to
A. Reinstate the petitioner, or
B. Grant petitioner a hearing, for the purpose of either
(1) Reinstating petitioner, or
(2) Clearing petitioner’s name
(3) If reinstated, petitioner requests
A. Salary
B. Fringe benefits
C. Retirement credits
D. Promotion credit and
E. Seniority credit — dating back to the time of his dismissal.
It is my decision that, as a matter of law, petitioner is not entitled to automatic reinstatement by court order prior to a determination after hearing by respondent.
Accordingly, respondent’s motion to dismiss the petition is granted to the extent of holding that petitioner is not entitled, as a matter of law, to a court order of reinstatement at this juncture. The petition is granted to the extent of directing the respondent to serve and file its answer to the petitioner within 20 days after service of a copy of the order to be settled on this opinion.
*978 As the petition is not now being considered on the merits, what now follows is merely my “opinion” on how this matter should or may be resolved.
If petitioner is successful on the merits and receives a court-ordered hearing (which I have in effect held he is entitled to as a matter of law) and after that hearing he is granted reinstatement by respondent, he should be reinstated as any civil service employee whose office has been lawfully vacated at one point in time, but who is to be reinstated.
In considering together sections 71, 73, 75 and 77 of the Civil Service Law, sections 434a-20.0 and 434a-22.0 of the Administrative Code of the City of New York and applicable case law,[3] I would find the petitioner, if reinstated, entitled to the following more specific relief:
(1) Back pay for the period between reversal and reinstatement, minus
(A) Any amount earned for other employment undertaken during that period,
(B) Any amount received as unemployment insurance during that period, and
(C) Any pay lost as a result of any suspension (if ordered after the reinstatement hearing) not to exceed 30 days’ pay.
(2) Any seniority, promotion or retirement credits retained according to the following analysis: the length of petitioner’s employment is to be considered continuous from the time of his initial hiring, but shall exclude the time between conviction and reversal.
(3) Not entitled to lost sick leave time (or a lump-sum payment for that loss), but vacation time will be calculated as if petitioner had been continuously employed, minus the time between conviction and reversal.
With respect to petitioner’s request for a name-clearing hearing, such a hearing is clearly unnecessary if petitioner is found entitled to a more extensive one pursuant to section 75 of the Civil Service Law and the property interest created thereby. I would, however, simply for argument’s sake, disagree with the Second Circuit in *979 Greene (683 F2d 32, supra) and state that if petitioner was found not entitled to a hearing as contemplated by section 75, I believe he would be entitled to a name-clearing hearing. In support of that belief I cite the following New York cases: Matter of Stanziale v Executive Dept. of Off. of Gen. Servs., 77 AD2d 600; Petrillo v Bates, 56 AD2d 577, mot for lv to app dsmd 402 NYS2d 572; Matter of Brathwaite v Manhattan Children’s Psychiatric Center, 70 AD2d 810; and Matter of Salvatore v Nasser, 81 AD2d 1012). I would find this case, and Greene, distinguishable from Bishop v Wood (426 US 341, supra).
Petitioner may renotice the petition upon five days’ notice, for consideration by this court on the merits, after service of a copy of the answer or after expiration of the time for answering. (See CPLR 7804, subds [e], [f].)

. This conclusion is reached, to a great extent, by reference to Judge Oakes’ concurrence at the Second Circuit in Greene v McGuire (683 F2d 32, 37). I refer most specifically to the following language: “The Toro court could have held that police officers’ employment interest at the time of dismissal because of a felony conviction, absent a departmental hearing, includes the right to reinstatement upon reversal of the conviction for insufficiency of the evidence, if they remain otherwise qualified to serve as police officers and positions are available.”
Unlike Judge Oakes, however, I do not believe Toro prevents such a holding in either Greene or the case now before me. I decline to state whether I believe this re-creation of rights upon reversal should be restricted to those cases reversed for insufficient evidence. I foresee problems with reversals of other sorts (though I eschew the term “legal technicality”), such as those that remand for new trial. I believe the case before me must be the most extreme — where the facts are agreed upon but the conduct complained of does not constitute a crime in this State.

. The Second Circuit’s interpretation allows the Legislature to “give with the right hand and take away with the left.” I will not now consider the possible application of Bishop v Wood (426 US 341, supra) to this situation, under which the State, if it so desired and intended, might argue that it has the right to both create an obligation and extinguish that obligation. My holding here is merely that absent a clear indication from the Legislature that that is what it sought to do, this statute will not be so construed.

. Alongi v City of New York, 92 Misc 2d 1082.