OPINION OF THE COURT
Chief Judge Cooke. .
At issue is whether, consistent with due process strictures, petitioner, a tenured public employee, may be dismissed from service without a hearing pursuant to section 73 of the Civil *124 Service Law, after he had been concededly absent from his position for a period in excess of 18 months as a result of a non service related disability. An ancillary question concerns the construction and validity of a provision in a collective bargaining agreement which purports to truncate the rights of the Village of Pelham to terminate the employment status of those unable to work due to nonservice related disabilities by granting those employees “unlimited sick leave with pay”.
Petitioner began working as a policeman for the Village of Pelham in 1971 and eventually attained permanent civil service status. On January 27, 1976, he was injured in an automobile accident not related to his employment and was immediately placed on paid sick leave. The severity of these injuries was sharply disputed and in October, 1976, petitioner was ordered to report back to work by the chief of police. Petitioner, claiming he was still unfit for duty, refused to comply and the village discontinued his sick leave pay. Ultimately, an arbitrator ruled that the village had improperly discontinued petitioner’s sick leave pay and directed that all of these funds due him be paid.
By resolution dated August 2, 1977 — some 18 months after the automobile accident — the village board of trustees terminated petitioner’s employment on the basis of his continuing nonservice related disability. That resolution was enacted pursuant to section 73 of the Civil Service Law which provides in part: “When an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability, other than a disability resulting from occupational injury or disease as defined in the workmen’s compensation law, his employment status may be terminated and his position filled by a permanent appointment.”
 Following termination, petitioner commenced this article 78 proceeding claiming that his due process rights were transgressed in that he had not been afforded a hearing prior to dismissal and that his dismissal was in contravention of his rights under the collective bargaining agreement granting village policemen unlimited sick leave. In his prayer for relief, petitioner sought reinstatement and restoration to sick leave status. Special Term granted the requested relief but a sharply divided Appellate Division reversed and dismissed the proceeding (67 AD2d 272). We now affirm.
The constitutional guarantee of due process of law (US *125 Const, 5th, 14th Arndts; NY Const, art I, § 6) is perhaps our greatest bulwark against unlimited power of the sovereign. Its essence is fundamental fairness. It demands that the government treat all justly by granting to the individual against whom governmental decisions operate the right to be heard. Broadly stated, the requirements of the due process clause are implicated whenever the enforcement power of the State, its subdivisions or its delegates are employed to deprive an individual of a liberty or property interest created or recognized by State law (Board of Regents v Roth, 408 US 564, 570). But, unlike some legal principles, the requirements of due process do not command that an inflexibly ordained procedure be applied to every case in which some right or status recognized by State law is threatened with alteration or extinguishment. Rather, each case turns on an independent analysis of the governmental and private interests exposed to State action. This inquiry focuses primarily on the nature of the private interest subjected to the official action and the risk of erroneous deprivation of that interest through the administrative procedures utilized. Also considered, although with less weight, is the governmental interest in affecting the private interest together with the fiscal and administrative burdens additional procedural safeguards would entail (see Goldberg v Kelly, 397 US 254, 263-271).
The due process protection afforded a public employee threatened with dismissal is dependent upon whether the employee has acquired a liberty or property interest in his employment (Matter of Petix v Connelie, 47 NY2d 457, 459). Although all are protected against arbitrary action (Matter of Cassidy v Municipal Civ. Serv. Comm. of City of New Rochelle, 37 NY2d 526), it is only after the employee demonstrates a legitimate claim of entitlement to continued employment that due process considerations are implicated. This requires an examination of State law to characterize the nature of the relationship that exists between the government and the employee (Board of Regents v Roth, 408 US 564, 577, supra).
It is undisputed that, as a permanent civil service employee (see Civil Service Law, §§ 58, 63), petitioner held a recognized property interest in his position (see Matter of Simpson v Wolansky, 38 NY2d 391). That interest, however, was not an open-ended one. For, while the State may create property interests subject to due process safeguards, it may, in furtherance of a legitimate State interest, designedly prevent the *126 accrual of protected property rights or circumscribe the instances in which those rights will be recognized (see Arnett v Kennedy, 416 US 134, 152). A tenured civil servant, then, has no entitlement to continued employment in perpetuity. The public policy of the State, by the terms of its statutes, regulations and common law, defines the scope and contours of that interest (Bishop v Wood, 426 US 341, 344). By way of illustration, the public interest would be ill served if its officers could remain in office despite an adjudication that there has been a violation of the public trust. Accordingly, section 30 (subd 1, par e) of the Public Officers Law provides that the property interest of a public officer in his position is extinguished upon his conviction of a felony (see Matter of Toro v Malcolm, 44 NY2d 146).
Likewise the interest of the State in maintaining the efficiency and continuity of its civil service is a substantial one. In its capacity as an employer, therefore, the government must have broad discretion and control over the management of its personnel and internal affairs (cf. Matter of Petix v Connelie, 47 NY2d 457, supra). The absence of a public employee from his position for a prolonged period unduly impairs the efficiency of an office or agency. In many cases, the duties of the absent employee must be absorbed by the remaining staff because temporary replacements are difficult to obtain. Continued performance of the business of government necessitates that there be a point at which the disabled officer may be replaced. These considerations were the practical impetus behind enactment of section 73 of the Civil Service Law (NY Legis Ann, 1965, pp 91-92). At the same time, operation of the statute serves to protect the interests of the affected employee. It relieves him of the travails of undergoing a disciplinary proceeding based upon absence from work which may carry with it the stigma of incompetency or even worse. Moreover, once removed, the statute affords the employee an opportunity to re-enter public service if he recovers and is fit to resume the duties of his position.
Section 73, then, grants civil servants something less than an unrestricted property right to continued employment subject to the full panoply of due process protections. It does so. by granting to permanent civil servants an entitlement to continued employment inextricably entwined with the limitations contained in the statute for determining that right, viz., no continuous absence from work for one year or more on *127 account of a nonservice related disability. Thus, the contours of petitioner’s entitlement to his position are circumscribed by the parameters of section 73 which, in this case, created an interest inferior to a full property right. Once it was demonstrated that petitioner’s condition satisfied the objective criteria triggering application of section 73, his property interest in the position could be extinguished in the sound discretion of the appointing authority (cf. Matter of Shedlock v Connelie, 48 NY2d 943).
However, the fact that section 73 circumscribes the contours of petitioner’s property interest does not mean that, consistent with the dictates of procedural due process, the statute may be utilized in every case without affording the affected employee any right to be heard. There is a marked distinction between those substantive entitlements created by State law and the procedural limitations imposed upon the power to abolish that right. Although the Legislature conceivably could elect not to confer any property interest in government employment (Bishop v Wood, 426 US 341, supra), it may not authorize extinguishment of that interest, once conferred, without appropriate procedural safeguards (Matter of Johnson v Director, Downstate Med. Center, State Univ. of N. Y., 41 NY2d 1061; Morrissey v Brewer, 408 US 471). Simply stated, the Constitution treats certain core procedural protections— notice and an opportunity to be heard — as mandatory incidents attendant to the final extinguishment of a property interest on stated substantive grounds.
Although there is no provision for a hearing contained in section 73, in some instances a hearing may be required to satisfy the demands of due process. As the statute conditions the continued existence of a property interest on the absence of certain specified objective criteria, where the facts underlying operation of the statute are in dispute the affected employee must be afforded an opportunity to be heard before that interest is finally extinguished (Mathews v Eldridge, 424 US 319, 334). For example, if the employee maintains that his disability arose in the course of his employment or there is a dispute concerning the length of time the employee has been disabled, the opportunity to be heard must be afforded.
Where the operative facts triggering application of section 73 are disputed, it may be preferable from an administrative point of view to hold the required hearing prior to termination. But there is no constitutional impediment to holding a *128 posttermination hearing (Matter of Sanford v Rockefeller, 35 NY2d 547, 554-555, app dsmd sub nona. Sanford v Carey, 421 US 973; see, also, Matter of Horodner v Fisher, 38 NY2d 680). This result obtains when the interest of the public employer is weighed against the interest of the employee in continued public employment. As noted previously, the interest of the governmental employer in being able to act expeditiously to remove an absent employee is substantial. Moreover, the issues at a section 73 hearing are sharply focused, easily documented and amenable to prompt resolution. In many cases, administrative action will turn upon routine, unbiased medical reports and the attendance records of the agency itself. The countervailing interest of the employee in continuation of his employment status, while strong, is not an overriding one. Since an employee whose position is terminated is awarded full retroactive relief, including back pay and reinstatement, if he prevails, the sole interest implicated is that of uninterrupted receipt of his income during the brief period between termination and the hearing. To be sure, in some instances even a brief interruption of income could constitute a serious hardship. But in most cases, in addition to access to private resources, employment in the private sector or many forms of government assistance will become available upon termination (compare Goldberg v Kelly, 397 US 254, supra).
In the present case, the failure of petitioner to be afforded a hearing worked no constitutional deprivation. Underlying the necessity for a due process hearing is some factual dispute impacting upon the employer’s right to discharge (Codd v Velger, 429 US 624). Nowhere has petitioner disputed that he has been absent from work for more than one year on account of a disability or that his disability was nonservice related. Indeed, to this day petitioner maintains that he is still disabled and requests that the village restore him to sick leave status. This failure to dispute any of the operative facts underlying the village’s invocation of section 73 is fatal to his claim that he was entitled to a hearing. The primary purpose of a hearing in this context would be to afford petitioner the opportunity to challenge the information in the hands of the village concerning his disability. When the operative facts are not in dispute, a hearing is unnecessary.
Finally, we reject petitioner’s claim that article XVI of *129 the collective bargaining agreement* barred his dismissal. In essence, he asserts that article XVI constitutes a perpetual job security clause for those suffering nonservice related disabilities. However, article XVI, by its plain terms, provides for unlimited sick leave benefits to employees of the village; it does not even purport to alter the right of the village to terminate those employees on sick leave who satisfy the criteria of section 73.
Even if article XVI could be construed in the unusual manner petitioner submits, public policy would prevent its enforcement. While a municipal employer may agree to provide preference for the filling of vacancies to certain individuals (Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 746), it may not surrender its ultimate appointing authority (see Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778). Similarly, whereas there is no prohibition against the establishment of a limited job security clause in a collective bargaining agreement (Matter of Board of Educ. v Yonkers Federation of Teachers, 40 NY2d 268, 271), public policy prohibits an employer from bargaining away its right to remove those employees satisfying the plain and clear statutory requisites for termination.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

 "An employee who is sick or injured may have unlimited sick leave with pay, subject to the right of the Village to deny or discontinue pay to any employee who is capable of working or whose absence is caused by an injury incurred while working for another employer.”