683 F.2d 32
 Wilma GREENE and Clarence Callis, Plaintiffs-Appellees,
v.
Hon. Robert McGUIRE, Police Commissioner of the City of New
York, Defendant-Appellant,
and
Hon. Robert Abrams, Attorney General of the State of New
York and Hon. Hugh Carey, Governor of the State of
New York, Defendants.
 No. 699, Docket 81-7595.
 United States Court of Appeals,
Second Circuit.
 Argued March 26, 1982.
Decided June 14, 1982.
 
 Paul T. Rephen, New York City (Frederick A. O. Schwarz, Jr., Corp. Counsel, Leonard Koerner, New York City, of counsel), for defendant-appellant.
 Harvey L. Levine, P. C., New York City, for plaintiffs-appellees.
 Before LUMBARD, MANSFIELD and OAKES, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Robert McGuire, the police commissioner of New York City, appeals from a summary judgment in the Southern District of New York, ordering McGuire to give plaintiffs Wilma Greene and Clarence Callis a hearing on their petition for reinstatement as police officers. Greene v. McGuire, 517 F.Supp. 1330 (S.D.N.Y.1981). Judge Goettel ruled that fourteenth amendment due process required McGuire to give plaintiffs a hearing before denying their applications, even though Greene and Callis had automatically lost their jobs by operation of law and had neither right nor reasonable expectancy of reinstatement. We reverse. Commissioner McGuire's decision not to reinstate plaintiffs deprived them of neither property nor liberty protected by the fourteenth amendment.
 
 
 2
 Both McGuire and plaintiffs moved for summary judgment after an exchange of pleadings and affidavits; there is no dispute as to the facts. Greene and Callis were appointed to the New York City police force in 1963 and 1961, respectively. They were plainclothes police officers with the 13th division in the Brooklyn North Public Morals District until May 1, 1972, when they and fourteen other members of their detail were indicted on various felony charges of bribery and conspiracy.[1] The officers were accused of belonging to a "pad" which turned a blind eye to illegal gambling in return for payoffs from the gamblers. Three officers who had belonged to the pad testified against their fellows; two of them placed Greene and Callis at a meeting of the pad. On October 3, 1973, all of the accused officers were convicted by a jury in Kings County. Greene, Callis and the others were dismissed from the police force on October 9, 1973, pursuant to Public Officers Law § 30(1)(e), which provides:
 
 
 3
 1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
 
 
 4
 e. His conviction of a felony, or a crime involving a violation of his oath of office.
 
 
 5
 On January 9, 1978, the appellate division reversed the convictions of both Greene and Callis. People v. Cona, 60 A.D.2d 318, 328-29, 401 N.Y.S.2d 239, 245-46 (2d Dep't 1978). Their fellow officers had testified against them, and in federal court this would have been enough to support their convictions. United States v. Messina, 481 F.2d 878, 881 (2d Cir.), cert. denied, 414 U.S. 974, 94 S.Ct. 286, 38 L.Ed.2d 217 (1973); Holmgren v. United States, 217 U.S. 509, 523-24, 30 S.Ct. 588, 591-92, 54 L.Ed. 861 (1910); Davis v. United States, 411 F.2d 1126, 1128 & n.1 (5th Cir. 1969). See E. Devitt & C. Blackman, I Federal Jury Practice & Instructions § 17.06 (3d ed. 1977). In New York, however, no defendant may be convicted solely on the testimony of accomplices. N.Y.Crim.Proc.Law § 60.22(1) (McKinney 1981). Only one non-accomplice witness placed Greene and Callis at the "pad," and he failed to identify them at trial leaving only the testimony of their fellow officers against the two. The Court of Appeals affirmed on December 13, 1979. People v. Cona, 49 N.Y.2d 26, 36, 399 N.E.2d 1167, 1171, 424 N.Y.S.2d 146, 151 (1979).
 
 
 6
 Their convictions reversed, plaintiffs sought reinstatement by writing to the Police Department in March 1980. On June 2, the Department replied with letters denying the petitions for reinstatement. It gave no reason in its letter for refusing reinstatement. The Department subsequently took the position that plaintiffs' reversal of their convictions in no way qualified them for their old jobs, because accomplice testimony would have been sufficient in departmental disciplinary hearings to justify their dismissal.[2] At any rate, on September 3, 1980, plaintiffs sued Commissioner McGuire under 42 U.S.C. § 1983, contending that his denial of reinstatement without prior hearing deprived them of property without due process of law in violation of the fourteenth amendment.
 
 
 7
 Judge Goettel held for plaintiffs, concluding that denial of reinstatement not only deprived plaintiffs of a property interest in their old jobs but also "stigmatized" them and thus impaired their "liberty interest" in their reputations. He conceded that Greene and Callis were not entitled to a hearing prior to their dismissal because § 30(1)(e) automatically extinguished on conviction whatever property interest they had in their jobs. He also agreed that reversal of their convictions did not entitle them to automatic reinstatement. But he reasoned that reversal nevertheless changed the situation:
 
 
 8
 The circumstances that led to the application of subsection 30(1)(e) no longer exist. It is inherently unfair to preclude even the possibility of plaintiffs' ever regaining their former positions.... While plaintiffs' forfeiture of office was justified upon their felony convictions, once the convictions were reversed, further deprivation can only be based on proof that plaintiffs are guilty of misconduct serious enough to bar reinstatement to their former positions....
 
 
 9
 Greene v. McGuire, 517 F.Supp. 1330, 1333 (S.D.N.Y.1981).
 
 
 10
 The due process clause is implicated only if a property or a liberty interest is affected by state action. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577, 92 S.Ct. at 2709. See Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Under the governing state law in the present case plaintiffs lost absolutely whatever tenure they had. Section 30(1)(e) provides that "(E)very public office becomes vacant upon the officers' conviction of a felony. A conviction of (the police officer) constitutes an abridgement of (his) office, automatically terminating its duration." Toro v. Malcolm, 44 N.Y.2d 146, 149-50, 375 N.E.2d 739, 741, 404 N.Y.S.2d 558, 561 (1978).
 
 
 11
 In Toro, a police officer had been convicted, had lost his job under § 30(1) (e), had been voluntarily reinstated and then sued for back pay. The Court of Appeals denied back pay, and in doing so made clear that reinstatement, though offered to Toro, was an act of grace and nothing more. The Court stressed that the public had a right to rest assured that its police officers are individuals of moral integrity.
 
 
 12
 A felony conviction, notwithstanding its reversal on appeal, may in many cases shatter this ideal. To avoid this occurrence, we believe the Legislature has chosen to vacate a public office upon the officer's conviction of a felony. More than 50 years ago we so held in Matter of Obergfell (239 N.Y. 48, 145 N.E. 323 (1924)) and the Legislature has not changed or amended the substance of section 30 since our decision. In the face of this clear statutory directive, the courts lack the power to order the reinstatement of a former officer or an award of back pay based upon the subsequent reversal of the officer's conviction.
 
 
 13
 Toro v. Malcolm, supra, 44 N.Y.2d at 151-52, 375 N.E.2d at 742-43, 404 N.Y.S.2d at 562 (emphasis added). The Court's words on reinstatement, though dicta, state the law of New York. See, e.g., Economico v. Pelham, 50 N.Y.2d 120, 126, 405 N.E.2d 694, 697, 428 N.Y.S.2d 213, 215-16 (1980) (§ 30(1)(e) "extinguishes" job); Gunning v. Codd, 49 N.Y.2d 495, 499, 500, 403 N.E.2d 1208, 1209, 1210, 427 N.Y.S.2d 209, 210, 211 (1980); Pesale v. Beekman, 81 A.D.2d 590, 437 N.Y.S.2d 448, aff'd mem., 54 N.Y.2d 707, 426 N.E.2d 483, 442 N.Y.S.2d 989 (1981) (administrative hearings after conviction and vacatur of officer per § 30(1)(e) were without effect).
 
 
 14
 It is clear that § 30(1)(e) was a condition on the jobs held by Greene and Callis which was not within the control of their employer but was a limitation as explicit as a clause in their contract. Once they were convicted-and the condition fulfilled-they lost their property interest. Nor is this condition unconstitutional for arbitrariness. It becomes operative only after a determination by an independent body that the officer has been guilty of serious misconduct. The statute did not work a provisional deprivation like the writs of replevin in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The plaintiffs' jobs are not like repossessed stoves or stereos which they can one day regain. The statute and its interpretations are plain: the plaintiffs' jobs are no more. When plaintiffs applied for reinstatement, they had neither the right to return nor any reasonable expectation of being rehired. Because state law left them nothing, Commissioner McGuire's decision deprived them of nothing. His decision did not implicate due process.
 
 
 15
 Nor did Commissioner McGuire's decision not to rehire plaintiffs work any deprivation of "liberty" by harming their reputations. The most relevant authority is Bishop v. Wood, supra. Bishop was a non-tenured police officer in Marion, N. C., who was fired for undisclosed reasons by a town manager without a prior hearing. He sued, alleging a denial of due process. The Court held that he failed to demonstrate a denial of either property or liberty. Such "stigma" as affected his reputation, the Court reasoned, could not be laid at the town manager's door. The reasons for Bishop's dismissal were disclosed only by his own suit. So here, any stigma attaching to Greene and Callis resulted from their conviction in state court, and they have received such relief from that stigma as the courts of New York can afford. Such "stigma" cannot be laid at Commissioner McGuire's door. He did not disclose reasons for denying reinstatement. His refusal to hire plaintiffs was no more stigmatizing than the refusal by any other, unrelated, government office. Such reputation as plaintiffs had when they applied to Commissioner McGuire in 1980, they keep after his refusal to rehire; the decision itself is not stigmatizing. Bishop v. Wood, supra, 426 U.S. at 348-49, 96 S.Ct. at 2079.
 
 
 16
 The district court found that it is "inherently unfair" for New York City to preclude rehiring the plaintiffs once their convictions have been reversed. But fairness is not relevant if neither property nor liberty is at stake. To paraphrase the Supreme Court, the validity or invalidity of plaintiffs' convictions determines whether or not Commissioner McGuire's decision to deny reinstatement was correct or prudent, but neither enhances nor diminishes their claim that their constitutionally protected interest in liberty has been impaired. "A contrary evaluation of (their) contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor had made a mistake." Bishop v. Wood, supra, 426 U.S. at 349, 96 S.Ct. at 2079. The Court concluded, "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Id. at 350, 96 S.Ct. at 2080. That statement is as applicable in New York City today as it was in Marion, N. C., in 1976.
 
 
 17
 Reversed.
 
 OAKES, Circuit Judge (concurring):
 
 18
 I concur.
 
 
 19
 I would readily agree with my brethren were the officers' convictions reversed on technical grounds, say for erroneous jury instructions, or admission of improper evidence. I am reluctant to agree, however, where, as here, the convictions were reversed for insufficient evidence.
 
 
 20
 Section 60.22(1) of the New York Criminal Procedure Law requires corroboration of accomplices' testimony. Because there was no corroboration at the criminal trial, the evidence against Greene and Callis was held insufficient, just as if no evidence at all had been presented against them. That this lack of corroboration goes to the sufficiency of the evidence is provided quite specifically by New York law:
 
 
 21
 The following definitions are applicable to this chapter:
 
 
 22
 1. "Legally sufficient evidence" means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof; except that such evidence is not legally sufficient when corroboration required by law is absent.
 
 
 23
 N.Y.Crim.Proc.Law § 70.10(1) (emphasis added). We too have so held. See, e.g., United States v. Freedman, 445 F.2d 1220, 1225-26 (2d Cir. 1971) (perjury case). Rules requiring independent corroboration are quantitative as well as qualitative. Weiler v. United States, 323 U.S. 606, 608, 65 S.Ct. 548, 549, 89 L.Ed. 495 (1945). What was once a practice of admitting an accomplice's testimony with a cautionary instruction became in many places, including New York, a rule of law barring convictions founded solely upon the uncorroborated testimony of an accomplice. See 7 Wigmore, Evidence § 2056 (3d ed. 1940). Although the policy underlying that rule is not immune to criticism, id. § 2057, where the rule is accepted, it clearly goes to the sufficiency of the evidence.
 
 
 24
 Because Greene's and Callis's felony convictions were reversed because of a lack of sufficient evidence to prove the criminal charges, I am unconvinced by the Police Department's argument that a hearing at this point would serve no purpose. A disciplinary proceeding, were it required, might not be governed by the same rules of evidence that governed the criminal proceeding. But that does not mean that the factfinder at such a proceeding would necessarily believe the uncorroborated testimony of the accomplice(s). It is particularly likely that the disciplinary factfinder would reject the accomplice's testimony in this case, since the accomplice witness could not identify the officers in court. People v. Cona, 60 A.D.2d 318, 401 N.Y.S.2d 239, 245-46 (2d Dep't 1978), aff'd, 49 N.Y.2d 26, 399 N.E.2d 1167, 424 N.Y.S.2d 146 (1979).
 
 
 25
 Although I am convinced that a post-termination departmental hearing would be salutary in this case, I am constrained by the Supreme Court's holding that whether there is a property interest in municipal employment that is entitled to federal due process protection must be determined solely by reference to state law. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); see id. at 353-54, 96 S.Ct. at 2081-82 (Brennan, J., dissenting). The New York statute, N.Y.Pub.Off.Law § 30(1)(e), provides that a police officer's office is vacated upon his conviction for a felony. As construed by a 5-2 majority of the New York State Court of Appeals, an officer's dismissal is not affected by reversal of his conviction for insufficiency of the evidence. Accordingly, a police officer is not entitled to back pay if he is voluntarily reinstated. Toro v. Malcolm, 44 N.Y.2d 146, 375 N.E.2d 739, 404 N.Y.S.2d 558 (1978). The Toro decision did not address directly the question of an officer's entitlement to a post-termination hearing to determine whether reinstatement without back pay should follow a reversed conviction. In concluding that there is no automatic right to reinstatement under such circumstances, however, the court in Toro noted that "(c)ontinued performance of governmental functions necessitates the existence of a point in time at which the affected office may be filled without concern for the possibility that at some future date a former officer's conviction may be reversed," 44 N.Y.2d at 150, 375 N.Y.2d at 742, 404 N.Y.S.2d at 561. Thus the Department is free to grant reinstatement, as it did in Toro, or to provide a hearing on whether reinstatement is appropriate, as the discharged officer reasonably might expect it in fairness to do. But the Toro decision strongly indicates that New York law recognizes no entitlement to reinstatement or to a hearing. Because Bishop v. Wood holds that there can be no constitutionally protected "property" interest in the absence of such a state entitlement, I am forced to conclude that a hearing cannot be required as a matter of due process.
 
 
 26
 I am uneasy with this conclusion. It is hard to understand why "liberty" or "property" interests for federal constitutional purposes must be so narrowly circumscribed. The Fourteenth Amendment, if nothing else, was aimed at protecting the rights of individuals against states. If the states can so facilely and conclusively define those rights out of existence, the Fourteenth Amendment becomes, to a great extent, a dead letter: a State may extinguish the possibility of due process safeguards simply by labeling an interest as nonproprietary.
 
 
 27
 The conclusion of the Toro case that no right to reinstatement remains after a police officer's felony conviction was hardly required under state law. See Toro v. Malcolm, 44 N.Y.2d at 154, 375 N.E.2d at 744, 404 N.Y.S.2d at 564 (Fuchsberg, J., dissenting) ("Is it not a fundamental precept of justice that, once it is finally decided that an accused has been falsely charged and, on this basis, has been proved guiltless, he is, so far as reasonably possible, to be treated as though he had never been accused at all?"). The New York Court of Appeals has held that permanent civil service employees have a "property" or "liberty" interest in their employment requiring that any dismissal from the police force satisfy due process. See Economico v. Village of Pelham, 50 N.Y.2d 120, 405 N.E.2d 694, 428 N.Y.S.2d 213 (1980); N.Y.Civ.Serv.Law §§ 58, 63, 75. That is to say, the officers have a property interest in their civil employment at the time of their conviction and dismissal. The right to post-termination proceedings, in other contexts, has been considered an aspect of that property interest under New York law. See id. at 128, 405 N.E.2d at 698, 428 N.Y.S.2d at 217. The Toro court could have held that police officers' employment interest at the time of dismissal because of a felony conviction, absent a departmental hearing, includes the right to reinstatement upon reversal of the conviction for insufficiency of the evidence, if they remain otherwise qualified to serve as police officers and positions are available. Cf. Matter of Barash, 20 N.Y.2d 154, 228 N.E.2d 896, 281 N.Y.S.2d 997 (1967) (upon reversal of a conviction, a disbarred attorney is entitled to a hearing on his motion for reinstatement and must be reinstated unless the charges and proof would justify disbarment). A post-termination hearing on the officers' qualifications, such as is now required for removal, N.Y.Civ.Serv.Law § 75, would then be an aspect of the process due at the time of the discharge, when appellees undeniably had a property interest. Cf. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (due process does not require an evidentiary hearing prior to termination of disability benefits, but availability of benefits to satisfy due process); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Civil Service Commission and Office of Economic Opportunity post-termination hearing procedures adequately protect the liberty interest of federal employees). See also Parratt v. Taylor, 451 U.S. 527, 538-43, 101 S.Ct. 1908, 1914-16, 68 L.Ed.2d 420 (1981).
 
 
 28
 Having rejected the possibility that a police officer's property interest includes a qualified right to reinstatement upon reversal of his or her felony conviction, however, the only constitutional limit on a municipality's termination of its employee is a slight one: whether as a matter of equal protection, the condition-here, a conviction subject to reversal-may be made the basis of an irreversible deprivation of government employment. The standard by which to resolve this question is not totally clear. If the standard is one of "mere rationality," that standard would seem satisfied by section 30(1)(e), for as the district court found, "(r)equiring that public officers convicted of a felony must forfeit all entitlement to an office of public trust is one way of" "ensuring the honesty and integrity of persons vested with public authority." See, e.g., Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (mandatory retirement of uniformed state police officers at age 50 does not deny equal protection under the applicable rationality standard). There is no showing that section 30(1)(e) excludes from service so many officers whose convictions are ultimately reversed as to render the criterion wholly unrelated to the objectives of the statute. See id. at 314-17, 96 S.Ct. at 2567-68.
 
 
 29
 It could be argued that "mere rationality" is too loose a standard of review, in light of the compelling interest in continued government employment. Utilizing that standard, the State equally could justify dismissing, without a hearing with respect to the underlying merits, police officers who are under indictment or even those who are merely under suspicion of misconduct, rather than suspending them as is presently the practice. See N.Y.C.Adm.Code § 435a-20.0. Under a stricter standard the reinstatement of qualified officers to available positions might well be required. But again the public employment context of this case gives me pause. While the case might have been governed by the stricter standard of such decisions as Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (qualifications for admission to the bar must have a rational connection with the applicant's fitness or capacity to practice; membership in Communist Party is not substitute for finding that applicant participated in illegal activity or did anything morally reprehensible), there still looms Bishop v. Wood, 426 U.S. at 349-50, 96 S.Ct. at 2079-80 (the Constitution does not address every individual mistake in personnel decisions by public agencies).
 
 
 30
 Having traveled perhaps a less direct route than the majority, my final destination, charted as it is by Higher Authority, must be the same.
 
 
 
 [1]
 The officers were suspended by the Police Department upon their indictment; on May 23, 1972, the Department instituted administrative proceedings against them. Pursuant to departmental policy, the administrative proceedings were held in abeyance while the officers were prosecuted, and were mooted when the officers were convicted and dismissed from the force
 
 
 [2]
 The Department contends that because testimony adduced at trial would be sufficient to find plaintiffs unfit to be police officers, a hearing at this point would serve no purpose. See Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977) (per curiam) (must be some dispute to justify a hearing). Because we hold that plaintiffs lost neither liberty nor property and therefore were not entitled to any hearing, we need not decide this question