**Michael LEONARDI, Plaintiff,**

v.

**BOARD OF FIRE COMMISSIONERS OF the MASTIC BEACH FIRE DISTRICT, et al., Defendants.**

No. CV 84–2512.

United States District Court, E.D. New York.

Sept. 17, 1986.

Frederic Block, P.C., Smithtown, N.Y., for plaintiff.

United Lawyers Service Inc., Wilson, Elser, Edelman & Dicker, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Michael Leonardi brings this action alleging that his termination as a member of the Mastic Beach Fire Department ("Department") without the benefit of a pre-termination hearing violates his rights under the United States Constitution, New York State law, and the Department's own by-laws. Plaintiff now moves for summary judgment on the issue of liability with respect to his federal claims. Defendants oppose plaintiff's motion, but apparently do not dispute the facts material to the motion. Accordingly, this case is ripe for summary judgment. Fed.R.Civ.P. 56.

### I.

Leonardi became a member of the Department on July 21, 1963. The Department is a volunteer fire company organized under the laws of the State of New York and maintained under the jurisdiction of the Mastic Beach Fire District ("District"). The Town of Brookhaven, New York established the District in 1941, pursuant to N.Y. Town Law § 170 *et seq.*, to provide for protection of the Mastic Beach community. Defendant Board of Fire Commissioners of the Mastic Beach Fire District and the Mastic Beach Fire Department, Inc. ("Board") is the governing body of the District.

On December 30, 1968, Leonardi received a Volunteer Fireman's Exemption Certificate pursuant to Gen.Mun.Law § 200 *et seq.*[1] Honored as Fireman of the Year in 1970, plaintiff fully performed his duties as a volunteer fireman in accordance with the Department's by-laws until 1976, when the onset of cervical radiculitis prevented him from attending to fires.[2]

Although Leonardi's physical disability prevented him from attending to fires after 1976, he satisfied his attendance requirements under the by-laws by attending to those duties which his disability did not preclude, such as drills, parades, funerals, meetings, and ambulance calls. In 1980 or 1981, plaintiff received a special award in recognition of the large number of ambu-

---

1. Gen.Mun.Law § 200 *et seq.* sets forth the prerequisites of exempt volunteer fireman status and provides that a certificate is to be issued to persons who achieve such status. Generally, five years of qualified service are required.

2. The Department by-laws provide, in pertinent part, that:

> An active member of the Mastic Beach Fire Department shall hereafter meet the following criteria: For the first year of this membership he shall serve a probation period. During that time he must attend 50% of all department functions hereupon mentioned. From the second to the tenth year of membership he must have maintained a 30% attendance record; from the eleventh—fifteenth year of membership he must have maintained a 15% attendance record; and from 15–20 years of membership he must have maintained a 10% attendance record.
> After twenty years of service as an active fireman in the Mastic Beach Fire Department, ... said member shall have the option of remaining an active member and continuing a 10% attendance obligation for the remainder of his membership or of becoming a life member with no attendance obligation. A life member shall not be an active member and shall not be permitted to attend at fires, nor shall he be entitled to receive any life insurance benefits; in all other respects, he shall be entitled to the rights and privileges of an active fireman. Any member who fails to meet this attendance schedule for a one year period shall be placed on a six month probation period, whereupon if he still fails to meet the attendance criteria for that six month period, his membership in the Mastic Beach Fire Department shall be terminated forthwith. No member shall be granted more than two of these probation periods within a three-year period. Exception to the attendance criteria are those firemen suffering from bona fide illness or who have been granted a leave of absence by the Chief during which they will not be required to meet any attendance criteria ... [A person eligible for active membership] must be of good moral character and sound of body, and shall meet such additional requirements as may be required to perform the full duties of volunteer firemen, including service at fires, and attendance at meetings, inspections, drills, schools of instruction (certificate holders of Suffolk County Fire School), parades and funeral services....

Mastic Beach Fire Department By-Laws, Art. II, § 2.

lance calls which he serviced. Plaintiff also served as the District's Secretary from 1976 to 1982.

In September 1982, the Assistant Chief of the Fire Department informed Leonardi that he was not meeting his attendance requirements. Thereafter, plaintiff furnished Chief Gary Messinetti with a doctor's note dated September 13, 1982, which contained a checkmark next to a printed statement noting that the patient was totally incapacitated. On May 24, 1983, Messinetti wrote to plaintiff stating, *inter alia,* that "[u]nless I receive a doctor's report indicating that you are once again fit for all firemanic duties, I will ask the board of fire commissioners to remove you from the active roles [sic] as of June 1, 1983...." Plaintiff, by letter dated May 28, 1983, responded that "a report from my doctor will be forthcoming as you requested."

However, by letter dated June 29, 1983, Board Chairman James A. Davis, Jr. notified Leonardi that the Board had met on June 28, 1983 and decided that "[b]ecause of total incapacitation for the past nine months, as stated by your doctor, and in accordance with the by-laws of the Mastic Beach Fire Department, your membership in the department is terminated effective immediately." The individual defendants, Board Commissioners Davis, Robert E. Mills, Thomas M. Kenneally, and Deward Houck, voted to terminate Leonardi's membership during that June 28 meeting. As a result, plaintiff was terminated three days short of the twenty years needed to become a lifetime member of the Fire Department, and certain life insurance policies, available to Leonardi as an active volunteer fireman, were cancelled.

In contrast to the reasons for termination put forth by Chairman Davis, Commissioner Kenneally testified at his deposition that plaintiff "wasn't dismissed because of incapacitation" but rather "because of his lack of attendance", and that he "was told several different versions of why [plaintiff] wasn't in attendance". Kenneally could not recall seeing a doctor's letter and had doubts that Leonardi's inade-

quate attendance record was disability related. He believed that Leonardi was capable of performing his duties, but stated that his judgment as to plaintiff's capabilities might be different if Leonardi had a bona fide illness.

Subsequent to his termination, Leonardi commenced a special proceeding under Article 78 of the New York Civil Practice Law and Rules, N.Y.Civ.Prac. Law §§ 7801–06, seeking a judicial determination restoring him as a member of the Department. Leonardi maintained that, although his disability prevented him from attending fires, it did not prevent him from performing other duties and functions of a fireman and that he had always satisfied his attendance requirements. Chief Messinetti noted in his affidavit in opposition to Leonardi's petition in that action that Leonardi's attendance for the period of September 1982 until his termination in June 1983 was only 1.08% of the total number of fires, meetings, and other duties and functions.

By order dated March 2, 1984, Leonardi's petition was denied without prejudice to renew "upon presentation of further proof regarding petitioner's prior status with respondents." Rather than renew his motion in state court, Leonardi commenced this action.

Leonardi was not given any opportunity to appear before the Board to be heard on the issue of his membership termination. Leonardi asserts that his status as a volunteer fireman constitutes a property interest and therefore his termination without benefit of a hearing violated his Fourteenth Amendment right to due process. Defendants contest plaintiff's assertion of such a property interest and further contend that plaintiff's termination was the legitimate result of his unjustified failure to comply with the Department's attendance requirements and, as such, was in conformance with New York State law governing the removal of volunteer members of fire departments.

II.

Fourteenth Amendment jurisprudence has established that a person has a consti-

tutionally protected property interest in public employment where contractual or statutory provisions guarantee continued employment absent "sufficient cause" for discharge. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A statute plainly creates a property interest, for example, where civil service employees are entitled to retain their positions during good behavior and cannot be dismissed except for "misfeasance, malfeasance, or non-feasance of office." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Constitutionally protected interests in public positions do not exist in a vacuum, but rather against a backdrop of legislative provisions and protections. Thus it is necessary to consider the New York law governing volunteer firemen such as Leonardi. Nonetheless, it must not be forgotten that the right to procedural due process is "conferred not by legislative grace but by constitutional guarantee. While the legislature may elect not to confer a property interest in ... employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J. concurring).

■ As noted above, Leonardi received a Volunteer Fireman's Exemption Certificate in 1968. Thus, at the time of his termination, he was within the scope of N.Y.Civ. Serv.Law § 75(1)(b), which provides that an "exempt volunteer fireman as defined in the general municipal law shall not be re-

moved....except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." [3] The Second Circuit has held that, under New York law, individuals covered by N.Y.Civ. Serv.Law § 75(1) possess enforceable expectations of continued employment which constitute protectable property interests. *Dwyer v. Regan,* 777 F.2d 825 (2d Cir. 1985); *Berns v. Civil Service Commission,* 537 F.2d 714 (2d Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977). Accordingly, the Board's failure to provide Leonardi with a pre-termination hearing constitutes a deprivation of a property interest without the due process of law guaranteed by the Fourteenth Amendment.

■ If it is assumed that Leonardi was terminated for disability, as originally contended by Chairman Davis, the conclusion that Leonardi has been deprived of a constitutionally protected property interest is in no way altered. Even putting to one side the protection of N.Y.Civ.Serv. § 75(1) and the protectable constitutional property interests it creates, the Board was still required to provide Leonardi with a pre-termination hearing. Under N.Y.Civ. Serv.Law § 73, an employee may be terminated when he has been "continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability, other than a disability resulting from occupational injury or disease as defined in the Workmen's Compensation Law." The New York Court of Appeals has made clear that where the facts underlying operation of the statute are in dispute, the employee must be given an opportunity to be heard before the property interest in question is extinguished. *Economico v. Village of Pelham,* 50 N.Y.2d 120, 428 N.Y.S.2d 213, 405 N.E.2d 194 (1980). In the case at bar, the parties have disputed the nature of Leonardi's disability and its continued effect upon Leonardi's performance of his duties and func-

**3.** N.Y.Gen.Mun.Law § 209–L states, "Removals on the grounds of incompetence or misconduct, except for absenteeism at fires or meetings, shall be made only after a hearing upon due notice and upon stated charges...." N.Y.Civ. Serv.Law § 75(1)(b) apparently provides additional protection for those volunteer firemen who have achieved "exempt" status.

tions as a volunteer fireman. Under the logic of *Economico*, therefore, a pre-termination hearing is required.

### III.

The Court's necessary inquiry on plaintiff's motion is not completed, however, by its conclusion that defendant's termination of Leonardi's position as a member of the Department without providing him with a pre-termination hearing violated his constitutional right to procedural due process. The Court must also determine the appropriate time period for which defendants are liable.

Proper consideration of this question requires that the Court focus carefully on the precise nature of the constitutional violation for which defendants are liable. Plaintiff's claim is for denial of procedural due process, *i.e.*, that the Board failed to comply with its statutory duty to grant plaintiff an opportunity to be heard prior to termination from membership and thereby violated his right to procedural due process under the Fourteenth Amendment. To put it slightly differently, plaintiff's claim is rooted in his termination by the Board in a manner that failed to provide the hearing that was his statutory and constitutional due. Any judicial relief to be awarded, therefore, must be limited to remedies designed to rectify harm suffered as a result of this failure to give plaintiff the chance at least to present his arguments against termination prior to the Board's taking its action.

If plaintiff had turned to this Court for relief directly upon his being terminated without a hearing, the relevant time period for which plaintiff might be entitled to damages or other possible relief would be clear, namely, defendant's liability would run from the date of Leonardi's improper termination without benefit of a hearing until the date a final decision of this Court were to be handed down. *Horton v. Orange County Board of Education*, 464 F.2d 536, 538 (4th Cir.1972). Furthermore, if the Board had at some point subsequent to plaintiff's termination conducted the

hearing it should have held prior to the termination, this post-termination hearing, although belated, would cut off the period for which it would be subject to liability for violation of plaintiff's due process rights. *Glenn v. Newman*, 614 F.2d 467, 473 (5th Cir.1980); *Thomas v. Ward*, 529 F.2d 916, 920 (4th Cir.1975). *Cf. Cofield v. Goldman, Sachs & Co.*, 364 F.Supp. 1372 (S.D. N.Y.1973) (damages limited in racial discrimination case to period between plaintiff's graduation from business school and defendant's subsequent offer of employment after original alleged denial of offer on racial grounds). What creates the conceptual and practical obstacle in the instant case is that although plaintiff never obtained any administrative hearing in front of the Board either before or after his termination, he did in fact avail himself of a provided opportunity to obtain a constitutionally sufficient hearing: Plaintiff commenced an Article 78 proceeding in state court seeking a judicial determination restoring him to membership in the Department and thereby obtained a judicial, if not administrative, forum for the presentation of his position that the Board's termination was improper.

The elements necessarily present for a "hearing" to satisfy the constitutional guarantee of due process vary depending upon the importance of the interests involved and the nature of other available proceedings. *Loudermill*, 105 S.Ct. 1487; *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). There can be little doubt, however, that an Article 78 proceeding, which establishes a judicial forum for claims of wrongdoing by governmental bodies or officers, permits the filing of a petition, supporting affidavits or other proof, an answer, and answering affidavits, and allows for the possibility of a complete determination by the court of all issues raised and even, if necessary, a trial, N.Y. Civ.Prac. Law §§ 7801–06, is more than adequate to meet the requirements of due

process. Such a proceeding provides far more than the notice and an opportunity to respond that are the cornerstones of the procedural due process protected by the Fourteenth Amendment. *Loudermill,* 105 S.Ct. 1487. Leonardi's failure fully to utilize the opportunity afforded him by the state court forum to present his side of the story and apparent decision in midstream that he would prefer to have his claims heard in federal court does not diminish the fact that he did obtain a constitutional hearing in state court that resulted in a judicial order dated March 2, 1984. The gravamen of plaintiff's federal claim being his denial of a chance to receive a constitutionally mandated hearing, any damages or other federal judicial relief to which he may be entitled as a result of the Board's failure to provide him with the required pretermination hearing must be limited to the period between this failure and Leonardi's eventual obtaining of a hearing in front of the state court.

There is, of course, as a general rule, no requirement that a litigant exhaust all available state administrative or judicial remedies prior to commencing a federal action asserting a violation of constitutional law. *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Also, the Second Circuit has recently held that a plaintiff's prior Article 78 proceeding cannot have a *res judicata* effect upon a subsequent civil rights claim for damages brought in federal court. *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986). Nonetheless, the question now before the Court is not whether Leonardi has a right to file or prosecute this action, which he unquestionably does, but merely the scope of damages to which he may be entitled. The Supreme Court has made clear that compensatory damages in cases premised upon violations of constitutional rights are only properly recoverable where there exists proof of actual injury. *Memphis Community School District v. Stachura,* — U.S. —, 106

S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Furthermore, other forms of judicial relief, such as punitive or nominal damages, can obviously be awarded in such cases only if a plaintiff sufficiently demonstrates that the defendant's actions brought about a specific deprivation of a constitutional right. *See Stachura,* 106 S.Ct. 2537; *Carey,* 435 U.S. 247, 98 S.Ct. 1042.

In the case at bar, the particular constitutional right violated was the Fourteenth Amendment's protection against the deprivation of a property interest without due process of law or, to put it more specifically, the right to a hearing regarding the propriety of plaintiff's termination from membership in the Department. Any identifiable injury cognizable under the constitution could only have occurred during that space in time between plaintiff's wrongful termination and the constitutionally adequate hearing he was afforded by the state court in the Article 78 proceeding. While plaintiff was under no compulsion to initiate such a state judicial proceeding, once he did so, and the state court provided him with the opportunity to be heard previously denied him, the sequence of events comprising a deprivation of a property right without the required constitutional procedural protections and chance for Leonardi to defend his claim of entitlement to continued membership came to an end.

■ The Court is aware of no authority, either within or outside the Second Circuit, which is directly supportive of or even closely analogous to that which the Court now holds. On the other hand, the parties' submissions and the Court's own research reveal a similar dearth of case law mandating a conclusion contrary to that reached by the Court. Despite this seeming absence of guidance, it is the Court's firm opinion that a proper understanding of the nature of the constitution's protection of procedural due process requires a holding that only harm resulting directly from the failure to provide the required hearing,

harm which necessarily could arise only during the period between termination and the provision of a belated yet sufficient hearing in the state court, can properly support any award of damages or other relief by this Court. Defendants' liability, therefore, must be limited to the just over eight month interim between Leonardi's termination and the state court's handing down of its order.

### IV.

Plaintiff has a constitutionally protected property interest in his position as an exempt volunteer fireman with the Mastic Beach Fire Department which was violated when the Board of Fire Commissioners terminated his position with the Department without benefit of a pre-termination hearing. Accordingly, the Court grants plaintiff's motion for summary judgment on the issue of liability with respect to his federal claims. Defendants are subject to such liability, however, only from June 28, 1983, the date of Leonardi's termination, to March 2, 1984, the date the decision was handed down in plaintiff's state court action. Further proceedings on the question of damages or other possible relief will be scheduled by the Court.

SO ORDERED.